### In re B. H. GLADDING CO.

(District Court, D. Rhode Island. February 5, 1903.)

### No. 307.

1. BANKRUPTCY—DEBTS ENTITLED TO PRIORITY—WAGES OF CLERKS DURING VACATION.

"Wages due to workmen, clerks or servants which have been earned within three months" given priority by Bankr. Act, § 64b (4) [U. S. Comp. St. 1901, p. 3447], means wages which are owing at the time of the bankruptcy, although they may not then be "due" in the sense of being immediately payable, and which have accrued within three months. It was not the purpose of this clause to make a distinction between wages due which have been earned and wages due which have not been earned, or to determine the wage earner's right by an inquiry into the amount of work done during the period of employment. The purpose is merely to limit priority to wages which have accrued within three months. The fact that during the three months clerks of a bankrupt were given vacations "with pay," such pay to be withheld, however, until the end of the year, during which time the employer became bankrupt, does not deprive the clerks of the right to prove their claims for such pay nor to priority.

**2. SAME—CONSTRUCTION OF CONTRACT.**
    A notice was posted by an employer that its clerks would be entitled
    to vacations with pay according to length of service, but that vacation
    payments would be withheld until the following January, and further
    stating that "it is understood and agreed that employés taking vacations
    agree that if for any reason employment is severed, voluntarily or other-
    wise, before January 1st, the vacation pay will be forfeited." Prior to
    the succeeding January the employer became bankrupt. *Held*, that the
    condition subsequent was solely for the benefit of the employer, its object
    being to secure a continuance of service from the clerks; that such ob-
    ject having been defeated by the bankruptcy, the court would not en-
    force the forfeiture and deprive the clerks of pay to which they were
    equitably entitled.

In Bankruptcy. On review of referee's decision disallowing the
claim of Thomas F. Little for wages.

Walter D. Brownell, for claimant.

Walter B. Vincent, for trustee.

BROWN, District Judge. This is a petition to revise the referee's
decision disallowing the claim of a clerk for wages during a period
when the clerk was on a vacation. The B. H. Gladding Company,
the employer, posted in its store a notice, the material parts of which
are as follows:

"General Notice.
"No. 15.                                                 June 11th, 1902.
    "The vacation period will extend from Monday, June 30th, to Sat., Septem-
ber 13th. Employees who have been continuously employed since January
1st, 1902, will be entitled to one week's vacation with pay. Employees con-
tinuously employed since July 1st, 1901, will be entitled to two weeks' vaca-
tion with pay. Vacation payments will be withheld, as has been the custom,
until the following January, and it is understood and agreed that employees
taking vacations agree that, if for any reason employment is severed, volun-
tarily or otherwise, before January 1st, 1903, the vacation pay will be for-
feited."

The clerk took two weeks' vacation, according to this notice. The
B. H. Gladding Company became bankrupt October 18, 1902. The
bankruptcy act gives priority, by section 64b (4) [U. S. Comp. St.
1901, p. 3447], to "(4) wages due to workmen, clerks, or servants
which have been earned within three months before the date of the
commencement of proceedings, not to exceed three hundred dollars
to each claimant." Upon a proper construction of this language, it
includes wages owing at the date of bankruptcy, even though, by con-
tract between the wage earner and bankrupt, payment is to be deferred
to a date later than the date of bankruptcy. The term "due" is one
of double meaning. At times it means a sum now payable; at times
it signifies a simple indebtedness, without reference to the time of
payment. In U. S. v. Bank of North Carolina, 6 Pet. 36, 8 L. Ed.
308, the court said, "Here, the word 'due' is plainly used as synony-
mous with owing." See, also, 10 Am. & Eng. Enc. Law (2d Ed.)
279. The mere fact, therefore, that payment of wages was to be de-
ferred or withheld, would not deprive the wage earner of priority, pro-
vided the right to wages had accrued before bankruptcy.

A further question is as to the effect of the limiting clause, "which
have been earned within three months before the commencement of

proceedings." It was obviously not the purpose of this clause to make a distinction between wages due which have been earned and wages due which have not been earned; but merely to limit the priority to wages owing which had accrued within a limited period. The relation of the parties as employer and employed was not affected by the fact that the employer voluntarily released the clerk from the obligation to perform services during a vacation period. To attempt distinctions between wages due which are earned and wages due which are not earned, by an inquiry into the amount of work done by the wage earner, would be entirely impractical. If we disallow claims for a week's vacation, we must also disallow claims for half days when stores are closed, and for days and hours when there is nothing to do. Wages are "earned," in the sense in which that term is used in the bankruptcy act, so long as a bona fide contract of hiring exists, and the clerk or servant continues in the master's employment and does all that he is required to do. The practice of giving vacations with continued pay is very general in all departments of business. Vacation wages cannot be regarded as a mere gratuity, given in recognition of past or present services. By continuing the relation of employer and employé during a dull season, the employer holds his working force in readiness for the active season. The relation of the employer and employed is as strictly a business relation as it is during the working season, and there is full legal consideration for the master's promise to pay wages during this period.

A further question arises as to the legal effect of the following paragraph:

"Vacation payments will be withheld, as has been the custom, until the following January, and it is understood and agreed that employees taking vacations agree that, if for any reason employment is severed, voluntarily or otherwise, before January 1st, 1903, the vacation pay will be forfeited."

This language must be construed as a provision for the benefit of the employer, designed to protect him in case an employé should leave, or be discharged, after vacation, and to secure the continuance of the services of his employés. It shows clearly on its face that the contract or regulation was one made in contemplation of the continuance of business, for it says, "Vacation payments will be withheld, as has been the custom, until the following January." The expressions, "vacation payments will be withheld," "vacation pay will be forfeited," when construed in connection with the statements, "Employees who have been continuously employed since January 1st, 1902, will be entitled to one week's vacation with pay. Employees continuously employed since July 1st, 1901, will be entitled to two weeks' vacation with pay"—indicate that vacation wages, like other wages, accrue and are owing as each week passes. The employé is to have a "vacation with pay." That the payments are to be withheld, and subject to forfeiture, affords no indication whatever that there is any failure of consideration, if the employé does not continue to work until January 1, 1903. The employés are, by the terms of the notice, entitled to a vacation and pay in accordance with the length of past services. They are liable to a forfeiture of pay upon the happening of a condition subsequent.

It seems clear that the phrase, "if for any reason employment is severed, * * * vacation pay will be forfeited," has no application to the contingency of bankruptcy. Its object is to secure a continuance of service during the fall season, to benefit the employer in a particular way; and neither he, nor any one claiming under him, can have any legal or equitable right to use the clause for a purpose entirely foreign to its object. A state of bankruptcy must defeat the original object. It is sound construction to say that a clause inserted for an object which could not be attained in a state of bankruptcy has no application to a state of bankruptcy. The attempt to apply this clause in the administration of the bankrupt's estate would lead to absurd and inconsistent results. It would entirely reverse the rules of priority established by congress; for the wage earner, who by law is given priority, would not only be deprived of his priority, but would be debarred altogether from any claim to a dividend from the bankrupt's estate. Ordinary rules of construction compel us to hold that a clause which was intended merely to secure a continuance of service should not be converted into an agreement which deprives the wage earner of his ordinary legal status as a creditor. Furthermore, a court of bankruptcy, in the administration of estates, is guided by principles of equity. If we assume that the bankrupt corporation had an arbitrary right to forfeit the wages of its clerks, it is evident that its officers have not exercised that right, and that they do not desire that the right should be exercised. There is certainly no reason why a court of equity should invoke a forfeiture, especially when this would lead to a result directly opposed to the general policy of the bankruptcy act.

The decision of the referee is reversed, and the claim is allowed as a claim having priority. A like order will be made in each of the cases involving similar claims.