### 2949.   HAAG *v.* ROGERS.

1. "The law will not construe a contract so as to give the debtor the right to destroy it by a simple refusal to comply with it, unless the terms of the contract are so clear and unambiguous as to make irresistible the conclusion that no other result could possibly be reached."
2. Where a contract of employment provides that it shall remain in force so long as is mutually satisfactory, and that the rate of wages shall be so much, but that the employee shall be entitled to so much extra compensation per month, provided he remain in the service until a set date, and not otherwise, the proper construction of the agreement is that either party may terminate the contract at will; and if the employee quits before the time set, or by his wrongful conduct makes it reasonable and just for his employer to discharge him prior to that time, he forfeits the extra compensation; but if the employer himself voluntarily and without cause sooner terminates the contract, the employee is entitled to a ratable part of the extra compensation.

3. A contract by which an employer is to pay the employee a certain amount as wages in any event, and an additional amount in the event he remains in the employment till the end of the contract, is not unenforceable as to the extra compensation on the ground that it is nudum pactum.

4. Whether fighting on the show grounds by the plaintiff, who was a workingman employed by the proprietor of a circus, was (especially in the absence of all evidence as to the nature and cause of the fight) a reasonable cause for his discharge was a question for solution by the jury, and is not a matter absolutely settled, as a matter of law, by the express provisions of the contract.

5. No error of law appears.

DECIDED SEPTEMBER 11; 1911.

Certiorari; from Berrien superior court—Judge Merrill. September 28, 1910.

*Hendricks & Christian,* for plaintiff in error.

*J. P. Knight,* contra.

POWELL, J.  1. In June, 1909, Haag, the proprietor of a circus, as party of the first part, and Rogers, as party of the second part, made the following contract: "The said party of the second part hereby agrees to render services as workingman for the season commencing on or about July 20, and to continue for the show season, or so long as mutually agreeable to both parties, under the following conditions: 1st. Party of the second part agrees to render services to Haag's Mighty Shows, in a painstaking manner, and to be responsible for all property damaged by careless driving or willful carelessness of any kind. 2d. Party of the second part agrees to abide by all rules made by the party of the first part, and for any violation of said rules is liable to a fine of one week's salary, or dismissal, and contract annulled. 3d. Party of the first part agrees to pay to the said party of the second part the sum of $10 per month, or if the said party of the second part remain in the employment of the party of the first part until close of season on December 31, 1909, party of second part is to be paid at the rate of $18 per month, but under no circumstances, if party of the second part fail to remain until said close of season, shall he be paid over the rate of $10 per month. 4th. Party of the second part can in no way obtain settlement in full of the $10 per month rate unless party of the first part has been notified in written form two weeks previous to settlement. 5th. The party of the first part agrees that said party of the second part is to have a plenty to eat, always the best obtainable under circumstances and the place we are in;

also that party of the second part is to have the best of treatment if his duties are performed in a painstaking manner. 6th. The management reserves the right to temporarily close the season for cause, during which time no salaries shall be paid. 7th. Be it clearly understood by party of the second part that under no circumstances, during the life of this contract, is party of first part liable for any damages for any accident that may happen to party of the second part. 8th. Party of the second part furthermore agrees that no compensation other than board, transportation, and $1 in cash will be given him should he render less than one month's service. 9th. $5 fine for each drunk or fight on show-grounds. Witness whereof hereunto set our hands and seals." On the back of the contract, which was duly signed by both parties, is the following: "Working Man's contract. Haag's Shows. E. Haag, Proprietor. For each drunk on or around show-grounds, $5 fine. For each fight on show-grounds, $5 fine. I agree to pay the above fines. [Signed] John Rogers." On November 2 Rogers had a fight on the show-grounds; Haag's manager discharged him, and tenderd to him $2.25 in full settlement of the balance due him. It is undisputed that, if it is proper to compute the wages at the rate of $10 per month, the correct amount was tendered, and that if they should be computed at the rate of $18 per month, $30.25 would be due. Rogers sued out before a magistrate an attachment, which was levied on a gray horse, and the defendant replevied by giving a bond for the eventual condemnation money. On the trial of the case the magistrate gave judgment in the plaintiff's favor for $30.25. From this judgment the defendant sought certiorari, but on the hearing in the superior court the judge overruled it, and to this judgment the writ of error now before us was sued out.

As the plaintiff in error (defendant in the original suit) sought certiorari directly from the decision of the magistrate without appealing to a jury, he is in the position where he must assume the burden of showing that there was nothing to submit to a jury, i. e., that the evidence demanded as a matter of law a finding in his favor. Every issuable fact is to be taken against him. That the plaintiff fought on the show-grounds is undisputed; the circumstances of the fight do not appear; it is not shown whether the plaintiff was the aggressor in the fight or whether the fight was thrust upon him as a matter of self-defense or by other reasons of

justification. Whether fighting on the show-grounds (in the absence of contractual stipulations on the subject) is sufficient cause for discharge would seem to be a jury question. So the judgment in the plaintiff's favor should stand, unless the contract itself is of such a nature as to forbid the recovery.

The contract provided for wages at the rate of $10 per month, which were paid or tendered, but stipulated for an additional $8 per month to be paid if the plaintiff remained in the employment until the end of the season. Only this additional $8 per month is involved; and the defendant's contention is that, as the plaintiff did not remain until the end of the season, but was sooner discharged, the language of the contract itself forbids a recovery. It is pointed out that there is an express provision in the contract that it was to continue only "so long as mutually agreeable to both parties," and that, therefore, the defendant had the right to terminate the employment at his will, either with or without cause. "The law will not construe a contract so as to give the debtor the right to destroy it by a simple refusal to comply with it, unless the terms of the contract are so clear and unambiguous as to make irresistible the conclusion that no other result could possibly be reached, and that such was the intention of the parties. Civil Code, § 3675, par. 4 [Civil Code (1910), § 4268]. Nor will a contract be so construed as to authorize one of the parties to take advantage of his own wrong, unless it be plain and manifest that such was the intention of the parties." *Finlay* v. *Ludden,* 105 *Ga.* 264 (31 S. E. 180); *Milledgeville Cotton Co.* v. *Cary,* ante, 391 (71 S. E. 503).

2. Applying the rule just quoted, we are of the opinion that the proper construction to give the contract before us is that either party might terminate it at will; that if the plaintiff terminated it prior to the close of the season, or caused it to be terminated by such conduct on his part as would ordinarily authorize a discharge, he forfeited all claim to compensation beyond $10 per month; that if the defendant terminated it voluntarily and without the plaintiff's having first given adequate cause, he would be liable not only for the $10 per month, but for the additional $8 per month which was being held back as a guarantee against the plaintiff's quitting the employment before the close of the season. It is frequently the case that an employer is willing to pay a higher rate of wages to a servant who will bind himself to remain in the employment for

a definite period, or so long as the employer may desire to keep him, than to one who may quit at a time when his services are most needed. It is entirely legitimate for an employer to contract that the employee shall have so much wages for his services generally, and so much additional if he does not quit prior to a named date. It is also legitimate (when the terms of the contract so permit) for the employer to hold back the extra pay until lapse of time has demonstrated that the employee has done his part. But in such a case, unless the language of the contract is too clear to admit of any other reasonable interpretation, the employer can not capriciously terminate the contract himself so as to avoid liability for the wages at the higher rate. Here the season was nearly over. To construe the contract as allowing the defendant then to terminate it without sufficient cause, and thereby to deprive the plaintiff of the extra compensation which was being held back as a guarantee against his quitting, would be to give the contract an oppressive and unnatural effect, which can hardly be said to have been within the fair contemplation of the parties. If he could thus terminate and forfeit the plaintiff's extra compensation in November, why not in late December, say on the day before the set time would have expired?

3. The plaintiff in error makes also the point that the agreement to pay the extra compensation of $8 per month is unenforceable because nudum pactum. He relies on the case of *Davis v. Morgan,* 117 *Ga.* 504 (43 S. E. 732). That decision holds that "where a contract of employment is made for one year at a stipulated salary per month, an agreement during the term to receive less, or to pay more, than the contract price is void, unless supported by some change in place, hours, character of employment, or other consideration." The distinction is plain. In that case the agreement for the extra compensation was not made as a part of the original contract, so as to be based on the consideration of mutual promises by which the contract as a whole was supported, but in the present case it was. In that case the extra compensation was purely a promised gift or bonus; in this case it was a part of the wages promised, though it was only conditionally promised.

4. It is also contended that the contract itself made fighting on the show-grounds, ipso facto, a cause for discharge, and that the court should have so held as a matter of law. A section of the

contract made violation of the employer's rules a cause for discharge, but it is not shown that fighting on the show-ground was a violation of rules, within the purview of that section of the contract. That section (which is quoted above) seems to deal with other matters, since fighting on the show-ground is specifically dealt with in another way; the plaintiff agreed to pay a "fine of $5" for that. It is true that this clause of the contract which provides for the fine may be unenforceable, because it stipulates for a civil penalty, still it is adequate to indicate that the parties did not consider fighting on the show-grounds as falling within the section of the contract which relates to violation of rules. Since the contract appears to have been prepared by the defendant, it must be construed most strongly against him.

5. The further points made are: (1) "that the attachment and levy were not introduced in evidence;" (2) "that there was no proof that the property levied on was that of the defendant or in his possession;" (3) "that the description of the property is too indefinite to identify the property and base a judgment," and one or two more of a similar nature. The attachment was a part of the pleadings; we know of no rule requiring it to be introduced in evidence on the trial of the attachment case itself. The gray horse was levied on as the property of the defendant, and he replevied. This is a sufficient answer to the other points. On some of its points the case is a close one, but we have reached the conclusion that the judgment complained of should stand.

*Judgment affirmed.*