LIVESTOCK FEEDS, INC. *v.* LOCAL UNION No. 1634 OF CONGRESS OF IND. WORKERS.

June 14, 1954

No. 39212          67 Adv. S. 77          73 So. 2d 128

*Huff & Williams,* Meridian, for appellant.

*Pyles & Tucker,* Jackson, for appellee.

HOLMES, J.

This case presents the question of the right of employees under a collective bargaining agreement to vacation pay or a pro-rata thereof, where the employment has been terminated through no fault of the employees. The question is one of first impression in this court. The facts as disclosed by the evidence and the admissions of the answer are not in substantial dispute.

The appellant is a corporation and operated under the name of Meridian Grain and Elevator Company, Inc., until March 29, 1952, when its corporate name was changed to Livestock Feeds, Inc., by an amendment to its charter. On March 28, 1947, Local Union No. 1634 of the Congress of Industrial Organizations was duly certified as the sole and exclusive bargaining agent of its members who were employees of the ap-

pellant. On January 19, 1951, the said union entered into a collective bargaining agreement with the appellant pertaining to wages, hours, and conditions of employment of certain designated employees of the appellant at its plant in Meridian. The agreement recognized the union at the sole and exclusive bargaining agent of such employees with respect to the matters governed by said agreement. Pertinent parts of the articles of the agreement are as follows:

## "ARTICLE IV — SENIORITY

"The company shall be the sole and exclusive judge of whom it will hire and in all matters pertaining to lay offs, recalls and promotions, except that where skill and efficiency are relatively equal seniority shall govern in matters pertaining to lay offs, recalls, and promotions. . . ."

## "ARTICLE VII — VACATIONS

"Each employee of the company who shall have not less than one year and not more than five years continuous service with the company prior to June 1, 1951, shall be entitled to one week's paid vacation computed at forty hours per week at regular pay; each employee having had five years or more of continuous service with the company as of June 1, 1951, shall be entitled to two weeks paid vacation computed on a basis of forty hours per week at regular rate of pay. All vacations shall be taken during the months of June, July, August and September and schedule of vacations shall be worked out by the management of the company so as to cause the least interference with normal operations of the mill, however, consistent with the company's needs and as far as reasonably convenient so to do, vacations will be granted at the time requested by an employee. Employees shall notify the company, in writing, not later than May 1st the date said employee's vacation is desired. Final authority and de-

cision at to the time of the granting of such vacation to any employee shall be vested in the company."

## "ARTICLE XII — COMPANY RIGHTS

"Nothing in this agreement contained shall be deemed to limit the company in any way in the exercise of the regular and customary functions of management, including the making in connection therewith, from time to time of such rules relating to operations as it shall deem advisable. The company has and will retain the unquestionable and exclusive right and power to manage the entire operations of the company and direct the work of all employees, including the right to hire, discipline, promote, or transfer its employees, and including the right to suspend, discharge or demote employees for cause, subject to seniority rights of employees as provided in Article IV. The right of the company in its sole discretion to diminish operations and make changes in schedule as circumstances may require is expressly recognized. The number of men to be employed is also at the sole discretion of the company and the fact that certain classifications and rates are established does not mean that the company must employ workmen for any one or all such classifications, or maintain any particular department, unless the company needs such workmen and, in its discretion, needs to maintain a particular department. The management of the company and the direction of the working forces is vested in the company."

## "ARTICLE XIV — EFFECTIVE DATE AND TERMINATION

"This agreement shall be in force for a period of one year from and after the closing of business on the 19th day of January, 1951, and from year to year thereafter, unless and until written notice is given of desired changes or modifications by either party sixty (60)

days prior to the expiration of the term of this agreement or any automatic extension thereof.''

The employees of the appellant entered upon the performance of said agreement, and all who qualified for vacation pay as of June 1, 1951, received such vacation pay and continued in their employment. The union gave timely written notice of its desire to modify and change the said agreement, and entered into negotiations with the appellant for a new contract, beginning January 19, 1952. After several meetings and continued negotiations without reaching an agreement as to the matters covered by said negotiations, the appellant and the union entered into a written agreement dated January 18, 1952, extending the original agreement on a month to month basis not exceeding one year, and providing that either party might terminate the agreement on ten days written notice to the other party. The employees of appellant continued in their employment under the provisions of the agreement, and ten days prior to February 29, 1952, the appellant gave the union written notice to terminate the agreement and on said date, discontinued their business and ceased operations, thereby terminating the employment of its employees who were covered by said agreement.

Upon the termination of the employment of said employees the union made demand upon the appellant for vacation pay for said employees claimed to have been earned subsequent to June 1, 1951. This demand was refused and the union then requested that the matter be submitted to arbitration as provided for in the agreement and this request was likewise refused. The union, acting through James Wilson, its secretary and treasurer, joined in individually by the said James Wilson, then brought this suit against the appellant in the Chancery Court of Lauderdale County, seeking to recover for the benefit of said employees vacation pay alleged to have been earned for the period subsequent to June 1, 1951. The appellant answered, denying

liability and incorporated in its answer a demurrer to the original bill upon the ground that there was no equity on the face of the bill. The demurrer was heard separately and overruled, and the case proceeded to a hearing on the merits. At the conclusion of the hearing, the chancellor found from the evidence that 61 of the employees of the appellant were qualified for vacation pay and were entitled to a pro-rata or proportionate part of their vacation pay on the basis that from June 1, 1951, to February 29, 1952, the date appellant ceased business, said employees had earned and were entitled to receive 9/12 or 3/4 of their annual vacation pay. Accordingly the chancellor awarded a decree against the appellant for $2,248.20, plus interest at the rate of 6% per annum from March 1, 1952, and appointed a trustee to receive the funds and disburse them, and required the appellant to furnish the trustee information requisite to determining the names and addresses of the employees and the amount to which each would be entitled under the court's decree. From the chancellor's decree, the appellant prosecutes this appeal.

The question of the right of the union to bring this suit and the contention of the appellant in its brief that any award made should have been in favor of individual employees have been eliminated from consideration by a stipulation of the parties.

The conclusion which we have reached renders it necessary that we deal only with the appellant's contentions that the court erred in overruling the demurrer to the original bill and erred in overruling appellant's motion to exclude the evidence and render a decree for the appellant, and we consider both such contentions together.

It is the position of the appellant that the collective bargaining agreement controls; that it made no provision for pro-rata vacation pay where the employment was terminated prior to the eligibility date for vaca-

tions through no fault of the employer; that the continuous employment for each employee to June 1, 1952, was a condition precedent to vacation pay and that this condition was not met. It is further the position of the appellant that the Union terminated the original agreement dated January 19, 1951, and entered into a new agreement dated January 18, 1952, and that in no event would the employees be entitled to pro-rata vacation pay other than for the period from January 18, 1952, to February 29, 1952, the date appellant ceased business.

■■■ We are of the opinion that the record does not support the contention that the original collective bargaining agreement was terminated by the union. By mutual agreement, that contract was continued in force except for the modification that it was to continue in force from month to month, subject to the right of either party to terminate it on ten days' written notice to the other party. It is our view that if the employees are entitled to vacation pay they are entitled to it pro-rata for the period from June 1, 1951 to February 29, 1952.

We agree with the appellant that the rights of the employees to vacation pay are to be measured by the provisions of the collective bargaining agreement. In deciding the question presented it becomes appropriate, therefore, to consider the rules of construction applicable to such agreements, and the purposes for which such agreements are made, and the category in which vacation pay is to be placed. The authorities generally are agreed that such agreements are not to be construed narrowly and technically, but are to be accorded the same liberality which is given other agreements in order to accomplish their evident purpose, which is to protect both the employer and the employee. Anno., 167 A. L. R. 993. The rule is stated generally in 31 Am. Jur., Sec. 113, p. 878, as follows: "The terms of the collective agreement, as included in an individual labor contract, ought not to be construed narrowly and technically, but broadly, so as

to accomplish its evident aims and to protect both the employer and the employee.''

In the case of Y. & M. V. R. R. Co. v. Webb (C. C. A. 5th Cir., Miss.), 64 F. 2d 902, the Court made the following apt statement: ''As a safeguard of social peace, it (referring to such an agreement) ought to be construed not narrowly and technically but broadly, and so as to accomplish its evident aims and ought on both sides to be kept faithfully and without subterfuge.''

The purposes of collective bargaining agreements are generally recognized. In Joseph Zwalanek v. Baker Mfg. Co., 110 Wis. 517, 137 N. W. 769, 44 L. R. A. (N. S.) 1214, the Court makes the following statement as to the purposes of such agreements: ''It tends to induce employees to remain continuously in the employ of the same master, and to render efficient services so as to minimize the possibility of discharge. It also tends to relieve the employer of hiring and breaking in new men to take the place of those who might otherwise voluntarily quit, and to insure a full working force at times when jobs are plentiful and labor is scarce.''

The authorities generally appear in agreement as to the category in which vacation pay is to be placed. They agree generally that it constitutes a form of additional earnings and is not to be regarded as a gratuity or a gift. Anno., 30 A. L. R. 2d 352. ''A vacation with pay is in effect additional wages.'' In Re Wil-Low Cafeterias, Inc., Kaftan v. Siegel, 111 F. 2d 429. ''It (vacation pay) is a supplement to the employment agreement which in effect constitutes an offer of reward as additional wages for constant and continuous service.'' Labor Law Enforcement v. Ryan Aeronautical Co. (1951), 106 Col. App. 2d Supp. 833, 236 P. 2d 236, 30 A. L. R. 2d 347. In Textile Workers' Union of America v. Paris Fabric Mills, Inc. (1952), 18 N. J. Super. 421, 87 A. 2d 458, Aff'd. 22 N. J. Super. 381, 92 A. 2d 40, the Court said: ''It is beyond dispute that an agreement to pay vacation pay to em-

ployees made to them before they performed their services, and based upon length of service and time worked, is not a gratuity but is a form of compensation for services, and when the services are rendered, the right to secure the promised compensation is vested as much as the right to receive wages or other form of compensation.''

██ In interpreting the collective bargaining agreement here under review, it is important, therefore, to bear in mind that the agreement is to be so construed as to accomplish its evident aims and protect both the employer and the employee, and that it is to be construed not narrowly and technically but broadly. It is well to bear in mind also that the purpose of such agreements is to procure efficient and faithful service and continuous employment, and that such purpose is a benefit both to the employee and the employer. ██ It is to be borne in mind also that vacation pay is not a gratuity or a gift, but is in effect additional wages for services performed.

The agreement here under review was subject to termination by either party on ten days' written notice to the other party. It was in effect, therefore, an agreement which was terminable at the will of either party. In the case at bar, all employees who had been in the service of the appellee for not less than one year prior to June 1, 1951, qualified for vacation pay. They were entitled, therefore, to vacation pay as of June 1, 1951. The pay to which they were entitled on that date constituted, as has been shown, additional wages, and necessarily the same constituted additional wages earned for one year prior to June 1, 1951. Beginning June 1, 1951, the employees entered upon service for an additional year, for which they would have been entitled to full vacation pay to June 1, 1952, had their employment not been sooner terminated. Since they entered upon the performance of their employment on June 1, 1952 under the provisions of the collective bargaining agreement, they thereupon became entitled to such wages as they earned from that

date to the date of the termination of their employment and it necessarily follows that if vacation pay constitutes wages, they would likewise be entitled to their pro-rata share of the vacation pay earned by them from June 1, 1951 to the date of the termination of their employment by the employer, which was February 29, 1952. It is argued by the appellant, however, that it ceased business because of financial difficulties, that is to say, that it was operating at a loss of from $2,000 to $5,000 a month, and that, therefore, its discontinuance of business was involuntary and with just cause and that it thereby incurred no liability to its employees for vacation pay.

The authorities are not in accord on the question of the employer's liability for vacation pay where the employer has in good faith discontinued business for financial reasons. Some courts have held that there is no right to vacation pay under such circumstances if the employer acted in good faith. Other courts have held that the closing of an employer's business does not eliminate the right to vacation pay on the theory that such pay has already been earned by the employees. Anno., 30 A. L. R. 2d 359. The question was ably dealt with by the learned Judge Augustus N. Hand in the case of In Re Wil-Low Cafeterias, Inc., Kaftan v. Siegel, supra, and we approve his views and conclusions expressed as follows:

"On October 7, 1936, some six months prior to the filing of the petition for reorganization, the debtor entered into a collective bargaining contract with Cafeterial Employees Union, Local 302, wherein the union was recognized by it as the representative chosen by the employees to bargain collectively on their behalf. The contract provided that all of the debtor's employees were to be members of the Union and subsequent to the making of the contract more than a majority were members. On May 11, 1938, a further contract was entered into by the debtor with the union, paragraph 28 of which reads as follows:

'All full time employees who will have concluded six months employment during the months of June, July, August or September, shall be entitled to three days' vacation with pay. All full time workers who will have completed one year's employment during the said months shall be entitled to a week's vacation with pay. All vacations shall take place during the months of June, July, August and September but may take place at any other time by consent of the union and the employer.'

"The debtor operated under this contract until June 7, 1938, when because no approvable plan of reorganization had been presented, the debtor was adjudicated a bankrupt, seven of its twelve stores were immediately closed and the employees thereof summarily discharged. . . .

"The claimant Kaftan, who had worked for the debtor nine years, was one of the discharged employees. At the time of the making of the order of adjudication and Kaftan's discharge he had received no vacation, though it had been already set for the first of August. Like many of the other employees of the debtor he filed his claim for one week's wages contending that at the time of his discharge on June 7, 1938, he had earned a right under the contract of May 11, 1938, to one week's vacation with pay. Judge Leibell allowed the claim of $47.00 for one week's vacation with pay. . . .

"A vacation with pay is in effect additional wages. It involves a reasonable arrangement to secure the well being of employees and the continuance of harmonious relations between employer and employee. The consideration for the contract to pay for a week's vacation had been furnished, that is to say, one year's service had been rendered prior to June 1, so that the week's vacation with pay was completely earned and only time of receiving it was postponed. If the employer had discharged the employee wrongfully after the latter had done the work necessary to earn a vacation he could not be deprived of the benefits due him. Zwolanek v. Baker

Mfg. Co., 150 Wis. 517, 137 N. W. 769, 44 L. R. A. (N. S.) 1214, Ann. Cas. 1914A, 793. In Re B. H. Gladding Co., D. C. 120 F. 709. . . . It can make no difference whether the discharge is due, as here, to a cessation of business by the employer, or was wrongful.''

In Haag v. Rogers, 9 Ga. App. 650, 72 S. E. 46, the Court dealt with a contract providing that it should remain in force so long as mutually satisfactory and providing further that the employees should be entitled to certain extra compensation per month if he remained in the service until a designated date and not otherwise. The Court there held that the proper construction of the agreement was that either party might terminate the contract at will and that if the employer voluntarily and without cause terminated the employment before the time for payment of the extra compensation, the employee was entitled to a ratable part thereof.

It seems clear to us that if vacation pay is additional wages, the employee is, in justice and right, entitled to a pro-rata share thereof if the employment be earlier terminated by his employer. We prefer to align ourselves with those authorities which hold that the cessation of business does not eliminate the right of the employee to his vacation pay. This holding seems to be in line with both reason and justice. Many authorities are cited by counsel for both sides. We see no necessity, however, for reviewing them, since they are not in accord. When it is determined, as it must be determined under the facts of this case, that the vacation pay which the employees received was extra compensation for the year immediately preceding June 1, 1951, and that the employees entered upon another period for which they would have been entitled to full vacation pay to June 1, 1952, but for the termination of their employment by their employer, and when it is recognized also, as it is generally recognized, that vacation pay constitutes extra wages or compensation, it must necessarily follow that the employee

is entitled to the wages earned to the date of the termination of his employment and if vacation pay is a part of such wages, as we hold it to be, then he is necessarily entitled to his pro-rata share of such vacation pay for the period from June 1, 1951 to February 29, 1952. Certainly it could not be successfully maintained that appellant could terminate the employment under similar circumstances and thereby escape liability for the regular wages of its employees earned to the date of such termination. We can perceive no difference in the result to follow where the wages claimed consist of vacation pay.

Accordingly it is our opinion that the chancellor was correct in overruling the demurrer to the original bill, and it is also our opinion that the decree of the chancellor in awarding pro-rata vacation pay to the employees of the appellant on the basis of three-fourths of the annual vacation pay which covered the period from June 1, 1951 to February 29, 1952 was likewise correct, and that it should be and is affirmed. To hold otherwise would give the agreement under review an oppressive effect insofar as the rights of the employees are concerned. In the case of Haag v. Rogers, supra, where the contract was terminated by the employer before the expiration of the term, the Court held that the employee was entitled to a ratable part of the extra compensation, and in so doing said: "To construe the contract as allowing the defendant then (before the close of the term) to terminate it without sufficient cause and thereby to deprive the plaintiff of the extra compensation which was being held back as a guarantee against his quitting, would be to give the contract an oppressive and unnatural effect which can hardly be said to have been within the fair contemplation of the parties." We endorse this language as applicable to the case here under review. In view of the provision in the decree appointing a trustee to disburse the funds and requiring the appellant to furnish requisite information upon which to determine the names and ad-

dresses of employees entitled to such pay and the amount to which each is so entitled, the cause will be remanded for further proceedings not inconsistent with this opinion.

Affirmed and cause remanded for further proceedings.

*Roberds, P. J.,* and *Lee, Arrington* and *Ethridge, JJ.,* concur.