**UNITED STATES of America,**
**Appellant,**

v.

**MUNRO–VAN HELMS COMPANY, Inc.,**
**Bankrupt, Appellee.**

. No. 16319.

United States Court of Appeals
Fifth Circuit.

March 21, 1957.

Rehearing Denied May 3, 1957.

Rives, Circuit Judge, dissented.

Louise Foster, Lee A. Jackson, Attys., Dept. of Justice, Washington, D. C., Charles K. Rice, Asst. Atty. Gen., John N. Stull, Acting Asst. Atty. Gen., Robert N. Anderson, Atty., Dept. of Justice, Washington, D. C., W. L. Longshore, U. S. Atty., Birmingham, Ala., A. F. Prescott, S. Dee Hanson, Attys., Dept. of Justice, Washington, D. C., Atley A. Kitchings, Jr., Asst. U. S. Atty., Birmingham, Ala., for appellant.

Hugo L. Black, Jr., Cooper, Mitch & Black, Jerome A. Cooper, William E. Mitch, Birmingham, Ala., for appellee.

Before RIVES, TUTTLE and JONES, Circuit Judges.

JONES, Circuit Judge.

Employees of Munro-Van Helms Company had a collective bargaining contract which stipulated for paid vacations. The vacation year as fixed by the contract was from July 1st through the following June 30th. The contract provisions regarding vacations, so far as here material, were as follows:

"Article 18. It is agreed that the Company will afford each of its employees who meet the qualifications set forth in this Article, a vacation with pay in the amounts specified hereinafter. (The vacation year shall run from July 1st of one year through June 30th of the following year).

"(A) 1. Vacation pay of two and one-half per cent (2½%) of an employee's total straight time earnings, i. e., excluding overtime, holiday pay, and premiums during the twelve-month period preceding July 1, shall be paid to each employee who is in the employ of the Company on July 1; and

"2. Who has, as of that time, worked 80% of his scheduled work hours during the twelve-month period immediately preceding July 1;

"(B) 1. Vacation pay of five per cent (5%) of an employee's total straight time earnings i. e., excluding overtime, holiday pay, and premiums during the twelve-month period preceding July 1, shall be paid to each employee who is in the employ of the Company on July 1st; and who meets all of the conditions of eligibility as specified in subsection (A–2) above, and

"2. Who has five (5) years of unbroken, continuous service with the Company as of July 1 of said year.

"(C) Any employee who was employed on the first operating day in January of any year, but less than twelve (12) months prior to July 1 of said year, and who meets all of the conditions of eligibility as specified in subsection (A–2) above, ex-

cept that he shall have worked 80% of his scheduled work hours between January 1 and July 1 of such year, shall also be eligible for two and one-half percent (2½%) of his total earnings during said year as a vacation payment.

\* \* \* \* \* \*

"(G) The employee's right to a vacation shall accrue as of July 1 of any year upon his meeting the eligibility requirements specified above. If, after such date, he should leave the employ of the Company for any reason, and if fully qualified for his vacation payment, he shall be paid his vacation pay as of the time of his leaving the Company's employ;

"(H) Employees who quit or who are discharged for just cause prior to July 1st shall forfeit any vacation rights accrued during the vacation year ending July 1st.

"(I) If an employee with one or more years prior service with the Company is on a lay-off status on July 1st he shall be paid vacation pay if he otherwise qualifies under the provisions of this article, and if he has worked as much as 6 months during the vacation year. \* \* \* "

The employer, Munro-Van Helms Company, filed a petition for an arrangement under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq. on June 30, 1953. On April 12, 1954, it was adjudicated a Bankrupt. By § 64, sub. a of the Bankruptcy Act, 11 U.S.C.A. § 104, sub. a it is provided:

"The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be (1) the actual and necessary costs and expenses \* \* \*, (2) wages not to exceed $600 to each claimant, which have been earned within three months before the date of the commencement of the proceeding, \* \* \* (4) taxes legally due and owing by the bankrupt to the United States \* \* \*."

The United States asserted a claim for withholding and unemployment taxes. The Referee held that the employees were entitled to a priority of payment for the entire amount of their annual vacation pay as wages earned within three months before bankruptcy. The district court affirmed the order of the Referee. The correctness of this ruling is for our determination on this appeal.

 The appellee reminds us, at the outset, that we should accept the Referee's findings of fact when approved by the district court. The principle is well settled. Gulbransen Co. v. Couch, 5 Cir., 1932, 61 F.2d 932. We are told that the Referee found "as a fact" that the employees earned a full year's vacation pay within three months before bankruptcy. If such finding be a fact finding, and as to this there may be doubt, it is one of those ultimate facts reached by process of legal reasoning from, or the interpretation of the legal significance of, the evidentiary facts, which, under the rule stated in the often quoted opinion in Galena Oaks Corporation v. Scofield, 5 Cir., 1954, 218 F.2d 217, we may review free from the restraining impact of the "clearly erroneous" rule.

Our question, a rather narrow one, is whether the district court correctly held that the entire year's vacation pay was earned within the three months' period. The appellee points to that part of the collective bargaining agreement which provides that the "employee's right to a vacation", and hence to vacation pay, "shall accrue as of July 1." Appellee then argues that "accrue" as used in the agreement has substantially the same meaning as "earn" in the Bankruptcy Act. For clarification of the problem it might be observed, first, that the right to priority of payment results from the Act and cannot be enlarged by contract; and second, that it is wages which are earned and the right to receive them which accrues.

 Like many another word, "accrue" has a number of meanings, 1 Words & Phrases, 582, but as used in the

contract it means, in our view, to become a present right or demand which is fixed or vested. Bouvier's Law Dict., 3rd Revision 111. The rights of the employees in this case were conditional, contingent or inchoate prior to July 1. On that day their rights became unconditional and absolute and these rights then accrued. See United States v. Safety Car Heating & Lighting Co., 297 U.S. 88, 56 S.Ct. 353, 80 L.Ed. 500. It might be noted that the contract does not provide that the vacation rights shall accrue "on" July 1, but "as of" July 1. "As of" means "as if it were". Horwitz v. New York Life Insurance Co., 9 Cir., 1935, 80 F.2d 295. "Wages" are compensation for personal services rendered by employees, and are "earned" when the service is rendered even though not then payable. The Talus, 5 Cir., 1918, 248 F. 670; Service Purchasing Co. v. Brennan, 226 Mo.App. 110, 42 S.W.2d 39.

Vacation pay is, by all of the decisions, regarded as wages. 6 Remington on Bankruptcy, 382, § 2807. The courts are not in accord as to extent of the priority which claims for vacation pay should be accorded by courts of bankruptcy. It has been held that full priority should be given to claims for vacation pay which accrued during the three months' period even though part of the services upon which the right to the pay is conditioned was rendered prior to the beginning of the three months' period. In re Kinney Aluminum Co., D.C.S.D.Cal.1948, 78 Supp. 565; Supp. Vol. 3 Moore's Collier on Bankruptcy, 192, § 64.203. This theory is based upon the assumption that the purpose of the priority granted to wage claimants is to benefit those who have lost employment by reason of the bankruptcy and need the protection of the statute. In re Kinney Aluminum Co., supra. It has been said, however, that the priority was intended to provide that those who created assets immediately prior to the filing of the petition and had not received payment for such creations should be set apart in a privileged class. In re Raiken, D.C.N.J.1940, 33 F.Supp. 88. This purpose would not be served by allowing priority for the full amount of vacation pay.

The better reasoned rule is, we think, that announced by the Ninth Circuit where Judge Healy, speaking for the court, said:

"Under the terms of the statute the compensation claimed must have been earned within the three months' period and also must be due. If any employee here had not, prior to bankruptcy, completed a year's continuous service no compensation for vacation time would have been due him, regard being had to the wage agreement. All having completed the required year's service prior to bankruptcy, vacation compensation may fairly be regarded as due even though the vacation was not to be taken until some later time; but the vacation had been earned by the performance of the entire year's service, and only one-fourth of it earned during the three months preceding bankruptcy. We see no more justification for giving priority to vacation pay conditionally accruing prior to such three months' period than for giving priority to straight wages earned prior thereto." Division of Labor Law Enforcement, State of Cal. v. Sampsell, 9 Cir., 1949, 172 F.2d 400, 401. And see In re Wil-Low Cafeterias, Inc., 2 Cir., 1940, 111 F.2d 429; In re Public Ledger, 3 Cir., 1947, 161 F.2d 762; Kavanas v. Mead, 4 Cir., 1948, 171 F.2d 195, 6 A.L.R.2d 645.

We decide that the vacation pay of those entitled to it under the contract constituted wages earned over the period of a year but such wages are entitled to priority only to the extent of one-fourth of the annual vacation pay. In reaching this conclusion we are aware that some of the employees will perhaps have put in more time during the yearly period than others whose vacation pay would be the same, and we recognize the possibility that some, perhaps all, will have worked more in some of the quarter-annual periods than in others. Vaca-

tions, and their equivalents in vacation pay, result from arrangements to secure the well being of employees and are factors in maintaining harmonious employer-employee relations. Each employee's status as such, under the vacation article of the agreement, continues even though there is an illness, a lay-off or other work interruption, and while continuing the inchoate vacation right accumulates. Cf. In re Wil-Low Cafeterias, Inc., supra; Livestock Feeds, Inc., v. Local Union No. 1634, 221 Miss. 492, 73 So.2d 128.

For further proceedings consistent herewith the judgment is

Reversed.

RIVES, Circuit Judge (dissenting).

Agreeing with the views expressed by the learned district judge,[1] I respectfully dissent. Wages can be "earned" only by virtue of a contract, express or implied, between the employer and employee. Wages may be, and ordinarily are, earned before they become "due," that is before the employee has a right to demand payment, but they are not earned before they accrue, that is before the obligation to pay under the contract of employment attaches to the employer.

Under the usual contract wages are "earned" when the service is rendered, but whether that be true or not depends upon the terms of the particular contract. For example, under the statute, § 64, sub. a(2) of the Bankruptcy Act, 11

U.S.C.A. § 104, sub. a(2), "wages" include commissions due salesmen employed on a commission basis. Though most, or even all, of his services may have been performed much earlier, no one could reasonably contend that a salesman had earned his commission until he actually effected a sale pursuant to the terms of his contract of employment. Or an employer might agree to pay wages to his employees at piece rates for each article completed according to a certain standard, and the wage for any article might not be earned until it had been so completed. Examples could be multiplied indefinitely to accord with the infinite variety of employment contracts.

With deference, I suggest in lieu of observations of the majority, " * * * first, that the right to priority of payment results from the Act and cannot be enlarged by contract; and second, that it is wages which are earned and the right to receive them which accrues", the following: " * * * first, that the right to priority of payment depends upon both the Act and the contract of employment; and second, that wages are not earned until the right to receive them accrues."

This statute was intended to give a limited priority of payment "for the benefit of those who are dependent upon their wages,"[2] who "could not be expected to know anything of the credit of their employer, but must accept a job as

---

1. "More narrowly, the court is called upon to construe the word 'earned' in the above quoted provision of the statute against the backdrop of the controlling contract. Turning to the common definition of the word 'earned' connoting 'to deserve and receive as compensation or wages,' it becomes apparent that the entire vacation pay as governed by the contract provisions was earned at the conclusion of the specified period rather than from day to day, week to week, or month to month, as an increment to wages. Such was the precise holding of this court in Textile Workers Union of America, CIO, vs. Saratoga Victory Mills, Civil Action No. 700, Middle Division. In that case the undersigned considered and rejected the reasoning in Division of Labor Law Enforcement, State of California

v. Sampsell, 9 Cir., 1949, 172 F.2d 400, and Kavanas v. Mead, 4 Cir., 1948, 171 F.2d 195. Persuasive authority of such cases is substantially weakened by the following note in 3 Collier on Bankruptcy § 64.203, 1955 Supplement, pages 183, 184:
" ' * * * Such wages [vacation pay] may accrue during the period, even though part of the services were performed before that time; priority is not limited solely to wage claims based upon services rendered during the three months specified. * * * Insofar as Kavanas v. Mead, supra, and Division of Labor Law Enforcement v. Sampsell, supra, hold to the contrary, they are believed to be incorrect.' "

2. Blessing v. Blanchard, 9 Cir., 223 F. 35, 37.

it comes,"[3] "to a class of wage-earners who generally have no substantial savings or other reserves to fall back on in case of adversity and therefore cannot afford to lose".[4] With deference, I submit that the purpose of the priority suggested by the majority[5] is wholly foreign to the philosophy of the Act. Is it more reasonable for us to conclude that Congress was thinking *coldly* of things, "assets," and increase thereof, or *warmly* of the men and women who earn their living by working for wages? Indeed, the majority answers its own suggestion when in the concluding paragraph of the opinion it recognizes that an employee may be entitled to priority to the extent of one-fourth of his vacation pay, even though in the last quarter of the vacation year he may have performed little or no work.

Under the contract of employment here involved, vacation pay is limited to those "in the employ of the Company on July 1,"[6] "the employee's right to a vacation shall accrue as of July 1." Those provisions make it clear, I think, that no employee "earns" any part of his vacation pay until July 1.

The Government claims that a contrary construction is called for by Section H of the contract:

"(H) Employees who quit or who are discharged for just cause prior to July 1st shall forfeit any vacation rights accrued during the vacation year ending July 1st."

That provision must be construed in connection with all of the other parts of the contract including the last sentence of Section G:

"If, after such date (July 1), he should leave the employ of the Company for any reason, and if fully qualified for his vacation payment, he shall be paid his vacation pay as of the time of his leaving the Company's employ."

In other words, those employees who leave the employ of the Company *for any reason* after July 1 receive their vacation pay, while those who *quit or are discharged* for just cause prior to July 1 do not receive vacation pay. Construing Section H in the light of the contract as a whole, it seems to me not contradictory of the other clearly expressed provisions, but to mean simply that the vacation rights of employees who quit or are discharged for just cause and then rehired should be calculated as if their employment began on the dates on which they were rehired.

The majority, I think, in its decision that one-fourth of the annual vacation pay is entitled to priority, goes beyond the logical effect of its opinion. The vacation year ran from July 1 through June 30. The Bankruptcy proceeding was commenced on July 30. Only about two of the three months before the date of the commencement of the proceeding preceded also the end of the vacation year. The third and last month was the first month of the next vacation year expiring June 30, 1954, as to which no right to vacation pay ever accrued. To be consistent, therefore, it seems to me that the majority should limit the priority nearer to one-sixth than to one-fourth of the annual vacation pay.

The effect of the majority opinion seems to me to be that in cases where there is a definite accrual date for an-

3. Matter of Lawsam Electric Co., Inc., D.C.N.Y., 300 F. 736, per Judge Learned Hand.

4. Matter of Estey, D.C.N.Y., 6 F.Supp. 570.

5. "It has been said, however, that the priority was intended to provide that those who created assets immediately prior to the filing of the petition and had not received payment for such creations should be set apart in a privileged class. In re Raiken, D.C.N.J.1940, 33 F.Supp. 88. This purpose would not be served by allowing priority for the full amount of vacation pay."

6. There was no similar provision in Division of Labor Law Enforcement, State of Cal. v. Sampsell, 9 Cir., 172 F.2d 400, but simply a requirement of one year or more of continuous service to qualify for vacation pay.

nual vacation pay and where the bankruptcy proceeding is commenced in any part of the year not within three months after such accrual date, vacation pay as wages earned would receive no priority whatever under the statute; no more than one-fourth of such pay could ever under any circumstances be given priority, the proportion being determined by a fraction, the numerator of which would be the part of the year before the commencement of the bankruptcy, not exceeding three months, which also preceded the end of the vacation year and the denominator being the entire year. That result, to my way of thinking, does not conform with either the letter or the spirit of the statute. I, therefore, respectfully dissent.

Rehearing denied. RIVES, Circuit Judge, dissenting.