In the Matter of The AD SERVICE ENGRAVING COMPANY, Bankrupt.

Nick A. ARABIAN et al., Appellants,

v.

Ralph H. COLEMAN, Trustee in Bankruptcy, Appellee.

No. 15547.

United States Court of Appeals Sixth Circuit.

Nov. 9, 1964.

John E. Purdy, Jr., Cleveland, Ohio, for appellants, Lane, Krotinger & Santora, Cleveland, Ohio, on the brief.

Archie M. Marks, Cleveland, Ohio, for appellee.

Before CECIL and O'SULLIVAN, Circuit Judges, and McALLISTER, Senior Circuit Judge.

O'SULLIVAN, Circuit Judge.

Two questions are involved in this appeal; first, whether priority under Section 64, sub. a(2) of the Bankruptcy Act, 11 U.S.C.A. § 104, sub. a(2), should be granted to the entire vacation pay coming due to a bankrupt's employees at the end of a full year's employment, or only to that part thereof represented by the portion of the year falling within three months prior to bankruptcy; second, whether amounts payable to a bankrupt's employees because of its failure to give one week's notice of the closing of the bankrupt's plant (referred to as severance pay) should be granted priority under Section 64, sub. a(2) of the Act.

### 1) *Vacation Pay.*

The Ad Service Engraving Company closed shop on February 10, 1961, financially unable to continue its operations. Claimants' services as its employees were terminated on that date. On February 27, 1961, an involuntary petition in bankruptcy was filed and the employer was adjudicated a bankrupt on March 8, 1961. Article VIII of the collective bargaining agreement between the company and its employees' bargaining agent provided:

"Section 2. Employees who have held positions during the entire previous calendar year shall be entitled to three (3) weeks vacation with pay during the following calendar year. * * *"

"(a) All other employees shall be entitled to one day's vacation for each sixteen (16) days or major fraction thereof, employed in the preceding calendar year, but shall not be credited with more than three weeks' paid vacation in any one year. * * *"

The claimants here involved had been continuously employed by the bankrupt during the calendar year 1960 and as of December 31, 1960, became entitled to the three weeks vacation. The three month period before the date of the institution of bankruptcy commenced on November 27, 1960, and ended on February 27, 1961. The claims of appellant Arabian and others for vacation pay for the calendar year 1960 were allowed, but only $^{35}/_{365}$ths thereof (the numerator 35 representing the days of 1960 falling within the three month period, and the denominator the days in a calendar year) was allowed priority. Vacation pay earned in 1961 at the rate of one day for each sixteen days worked between January 1, 1961, and the closing of the bankrupt's plant on February 10, 1961, was allowed and granted priority as having been earned within the three month period.

The Referee, affirmed by the District Judge, was of the view that the three week vacation, due from the end of the calendar year 1960, had been "earned" day by day over the entire year, and that only that portion thereof which was so earned by work done within the portion of the statutory three month period that fell within 1960 was entitled to priority. We agree.

Appellant's position is that the vacation pay was not earned within the meaning of Section 64, sub. a(2) until the full year's work of 1960 had been performed. Yet those who had performed less than a full year's work would be entitled to vacation upon substantially the same formula as those working the full year, viz.: one day's vacation for sixteen day's work. We do not think that any employee of bankrupt "earned" his entire vacation pay by or at the end of the last hour worked on December 31, nor that he earned the full three weeks vacation by the work done within the last thirty-five days of the year. We would consider that wages or other rewards are earned when the work for which the wages are to be paid or the reward given, is performed. We are

supported in this view by United States v. Munro-Van Helms Co., 243 F.2d 10, 13 (CA 5, 1957); Division of Labor Law Enforcement v. Sampsell, 172 F.2d 400 (CA 9, 1949); In re Mergentime, Inc., 217 F.Supp. 887 (S.D.N.Y.1963); see also Kavanas v. Mead, 171 F.2d 195, 198, 6 A.L.R.2d 645 (CA 4, 1948). Whatever factual differences may exist between those cases and the case at bar do not detract from the support they afford to our conclusion. We find the following statement in Munro-Van Helms, supra, a simple and clear exposition of our own thinking:

> " 'Wages' are compensation for personal services rendered by employees, and are 'earned' when the service is rendered even though not then payable." 243 F.2d 13.

There is an able dissenting opinion in the Munro-Van Helms case, but we disagree with it as with the cases of In re Kinney Aluminum Co., 78 F.Supp. 565 (D.C.S.D.Cal.1948), and In re B. H. Gladding Co., 120 F. 709 (D.C.R.I.1903), relied on by appellant. To the extent that they may lend some support to appellant, we also decline to follow In re Magazine Associates, Inc., 43 F.Supp. 583 (S.D.N.Y.1942) and In re National Marble & Granite Co., 206 F. 185 (N.D. Ga.1913), but point out that these were cases involving commissions that were neither earned nor accrued until a sale was completed within the three month period.

### 2) Severance Pay.

The collective bargaining contract provided in Article X, Sec. 3, that "at least one (1) week's notice shall be served by an employee before leaving a position, and by the superintendent or foreman before discharging an employee." While it is obvious that the bankrupt's employees were aware of its precarious financial condition and the imminence of a final shutdown, no advance notice of the shutdown was given. It is clear that up to the last day of work the bankrupt's owners and executives were hoping for help that would

allow it to carry on. The shop was closed on the same day that the decision to do so was made. The employees filed claims for one week's pay because no advance notice of the termination of their employment had been given, and asserted that such claims should be granted priority status as wages "earned" within three months of the bankruptcy. The Referee disallowed the claims entirely; the District Judge allowed them as general claims, but denied them priority status. We affirm the District Judge. The Referee was of the opinion that since the notice was required to be given "by the superintendent or foreman" and these latter were members of the same union as the claimants, their failure to have given notice could not be charged to the bankrupt company. We do not agree with this conclusion as we consider the obligation to give notice "by the superintendent or foreman" was that of the company. The referee concluded, however, that if any claim arose because of lack of notice, it was not entitled to priority status. He concluded, "not having worked during such week [the week following termination of their employment] they earned no wages but may claim the amount as damages." This makes sense, and no amount of construction can make this damage claim one for wages "earned" on the day of termination or within three months prior thereto. In re Elliott Wholesale Grocery Co., 98 F.Supp. 1017 (S.D.Cal.1951), aff'd sub nom. McCloskey v. Division of Labor, etc., 200 F.2d 402 (CA 9, 1952) and in In re Public Ledger, Inc., 161 F.2d 762 (CA 3, 1947), relied on by appellants, are distinguishable. In McCloskey the contract specifically provided for notice or "pay in lieu thereof," creating a right to wages rather than damages. And in Public Ledger severance pay was allowed priority either as expenses of administration to employees retained by the trustees or under a provision providing for severance pay regardless of notice, if the employee had earned it by working for a specified period. Wholly apart from these differences, however, we do not view the damage claims that arose from the bankrupt's failure to give formal advance notice of its forced shutdown as wages "earned."

Judgment affirmed.