SERVICIOS MÉDICOS HOSPITALARIOS SAN CRISTÓBAL, INC., d/b/a HOSPITAL SAGRADO CORAZÓN, Petitioner, *v.* PUERTO RICO LABOR RELATIONS BOARD, Respondent; PUERTO RICO LABOR RELATIONS BOARD, Petitioner, *v.* SERVICIOS MÉDICOS HOSPITALARIOS SAN CRISTÓBAL, INC., d/b/a HOSPITAL SAGRADO CORAZÓN, Respondent.

Nos. O-68-299, O-69-56.    Decided December 10, 1969.

*Charles H. Juliá* for petitioner and respondent. *José F. Rodríguez Rivera, Acting Solicitor General, Celia Canales González, Marta Ramírez Vera,* and *José E. Rodríguez Rosaly* for the Labor Relations Board.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

On December 16, 1966 the company Servicios Médicos Hospitalarios San Cristóbal, Inc., doing business as Hospital Sagrado Corazón, and the Unión General de Trabajadores de

Puerto Rico (U.G.T.) signed a collective bargaining agreement which was in effect for a period of one year. Article IX of said collective bargaining agreement provided for the payment of a Christmas bonus on the following terms:

"Section 1—The Hospital binds itself to grant a Christmas bonus at the end of the year, on December 24, to the employees who have worked for three (3) months at that date, equivalent to a workweek. Provided, that those employees who stop working before that date, shall receive the part of the bonus which corresponds to them on the basis of prorate."

On June 25, 1968, the contract having already expired the Unión filed an unfair labor practice charge against the employer for violation of the contract, § 8(1) (f) of the Labor Relations Act, 29 L.P.R.A. § 69(1) (f), consisting in having omitted the payment of the bonus corresponding to the years 1966 and 1967. The corresponding complaint having been issued, a hearing was summoned before a Trial Examiner, at which both parties appeared. The issue was submitted through a stipulation of facts, which in its pertinent part reads as follows: "2. On December 16, 1966 the collective bargaining agreement was signed between the parties and was in effect until December 16, 1967"; "4. Since the beginning of May 1966 the respondent employer has been operating the hospital. . . ."

The Trial Examiner rendered his report to the Board. He concluded that the hospital had violated the contract in not paying the bonus corresponding to the year 1966, but not so with respect to 1967. On November 13, 1968 the Board issued its decision and order, adopting the Trial Examiner's conclusions, but modifying them in order to determine that the company had also violated the agreement in not satisfying the bonus for the year 1967. The employer requested the review of the order in appeal No. 0-68-299 before us; the Board, in its turn, in appeal No. 0-69-56 requested this Court to enforce its order, which in essence consisted in an order to

cease and desist from violating in any manner whatsoever the terms of the collective bargaining agreement, and in taking a certain affirmative action to effect the purposes of the law consisting in (a) the payment of the bonus to those employees who were entitled to the same, (b) the fixing of a notice, and (c) the notice to the Chairman of the Board of the measures taken to comply with the order.

■■ 1. The employer complains that the Board issued its decision and order without granting it a previous hearing. It alleges that "[a]lthough the parties did not request a public hearing the Board motu proprio should have granted it to hear the parties, especially considering that it modified the Trial Examiner's report which had exonerated it from the payment of the bonus corresponding to the year 1967." This contention lacks merit. Neither the applicable law nor the regulations provide the holding of a hearing after the report of the Trial Examiner has been rendered and previous to the decision of the complaint by the Board.[1] Moreover, respondent, after the Trial Examiner's report had been issued, did not file exceptions thereto nor request a hearing, submitting thus the case on the basis of the record. In this manner, the Board was placed in a position to decide the matter forthwith, following the recommendations contained in the report "or in any other manner,"[2] Art. II, § 10 of Regulations No. 2 of the Labor Relations Board, 29 R.&R.P.R. § 64–11. Be it as it may, since a mere question of interpretation of the terms of the contractual clause was involved and respondent having stated clearly its position upon alleging certain affirmative defense in its answer to the complaint, we do not see what

---

[1] The only public hearing guaranteed by the Labor Relations Act is provided in § 9(1)(a), 29 L.P.R.A. § 70(1)(a).

[2] In *Rivera* v. *Labor Relations Board*, 70 P.R.R. 320 (1949), we stated that the recommendations of a Trial Examiner are not binding on the Board, even though the parties affected by the report did not file any exception thereto, and we described the report as "a . . . recommendation which the Board, . . . has discretion to alter."

decisive efficacy the holding of another hearing before the Board would have had.

2. For the first time before us the hospital points out that by virtue of Art. II of the agreement, the issue should have been submitted in the first instance to the grievance committee which is created therein. In its § 1 said article authorizes the committee to "take cognizance of, investigate, and decide any complaint, claim, or dispute which may arise" in connection with the contract; and in its § 2 it provides that "all the disputes and differences which may arise during the existence of this [a]greement *may be* submitted to the [c]ommittee . . . for a final solution." The provision of § 1 refers, as it is inferred from other clauses, to the employees' individual claims; § 2 is conceived in optional and not binding terms. In view thereof, and of what is stated hereinbelow it is not necessary to decide expressly whether a clause of this kind inhibits the intervention of the state body designed to keep the equilibrium and peace in the relations between industry and work.[3] *Cf. L.R.B.* v. *M.B.A.*, 91 P.R.R. 484 (1964).

*Pérez* v. *Water Resources Authority*, 87 P.R.R. 110 (1963), does not have the scope which the company seeks to attribute to it. It limits itself to prohibit the parties to appeal to the *judicial forum* when it has been contractually agreed to submit the controversies to arbitration.

On the other hand, at least insofar as to the discrepancy about the satisfaction of the bonus corresponding to the year 1967 is concerned, the arbitration mechanism would not have been available because the agreement had expired since De-

---

[3] Usually the Board does not intervene in controversies about interpretation of collective bargaining agreements unless it understands that a substantial injury to the public interest exists. See, *Simmons International, Ltd. y Local 423 of Upholsterer's International Union of North America, AFL-CIO*, 2 D.J.R.T. 250 (1953), cited in *Pérez* v. *Water Resources Authority*, 87 P.R.R. 110, 117 (1963).

cember 16, date prior to that agreed for the payment. *Cf. L.R.B.* v. *P.R. Telephone Co.,* 91 P.R.R. 883 (1965).

3. The position of the hospital, insofar as the interpretation of the contractual clause is concerned, is that the term of three months, which Art. IX fixes as a condition to be entitled to the bonus on the 24th day of that year, is deduced from the date on which the agreement was signed, on the previous 16th, and that, therefore, no employee was entitled to the bonus because they had not complied with said period of three months. It also maintains that, since on December 24, 1967 the agreement had already expired, it did not have any obligation to verify the payment.

■ Both interpretations are specious. If they would prevail they would have the practical effect that the parties incorporated a provision about bonus completely inoperative.

From the very text of Art. IX of the agreement it appears that the bonus was subject solely to the condition that the employees had worked three months before December 24. It cannot have any other effect than that of depriving from the benefit those who at the said date had worked less than three months. If we adopted the employer's interpretation we would be adding to the agreement something which it does not contain, that the three months would be counted from the date on which the same was signed. See, *Luce & Co.* v. *Labor Relations Board,* 86 P.R.R. 402 (1962). It should be remembered that although the agreement was signed on December 16, 1966, the employees which belong to the contracting union had been working for the employer since the month of May.

■ As to the 1967 bonus we agreed with the Board that the rights accrued during the effectiveness of the agreement outlive the date of its expiration. When the agreement expired on December 16, 1967 the employees who had worked three months since the previous December 24 were entitled

to the stipulated bonus. The fact that at the date fixed for the payment, December 24, 1967, the agreement had expired does not deprive the employees of the Christmas bonus. A similar conclusion has been reached by other courts in considering like situations, on the ground that these benefits are granted to achieve precisely continuity in the rendering of services. See, *Valeo* v. *J. I. Case Co.*, 52 L.R.R.M. 2420 (Wis. 1963); *Marvin Turner Engineers* v. *Allen*, 44 L.R.R.M. 2626 (Texas 1959); *Livestock Feeds* v. *Local Union No. 1634*, 73 So.2d 128 (Miss. 1954); *Textile Workers Union* v. *Paris Fabric Mills*, 92 A.2d 40 (1952). The interpretation proposed by respondent is at variance with reason. It suffices to say that if an employee would have stopped working before the expiration date of the agreement the company would have had to settle and pay him the proportional part of the bonus. Those who worked until the agreement expired cannot be deprived of the same.

Judgment will be rendered enforcing the order of the Labor Relations Board of November 13, 1968.

Mr. Justice Rigau concurs in the result. Mr. Chief Justice Negrón Fernández and Mr. Justice Hernández Matos did not participate herein.