### In re CROUTHAMEL POTATO CHIP CO.

### Civ. A. No. 85–0048.

United States District Court,
E.D. Pennsylvania.

July 23, 1985.

Michael H. Reed, Barbara Sagar, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for trustee.

Stewart Fishbein, Tax Div., Dept. of Justice, Washington, D.C., for the United States.

Thomas W. Jennings, William J. Einhorn, Kent Cprek, Philadelphia, Pa., for union.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

This action involves appeals from two orders entered by Chief Bankruptcy Judge Emil F. Goldhaber dated November 23, 1984 and December 4, 1984. The November 23, 1984 Order, 43 B.R. 937, sustained the trustee's objection to a proof of claim for wages and benefits (No. 143) filed by the International Association of Machinists and Aerospace Workers, Local No. 1092, District No. 152 ("the Union"). The De-

cember 4, 1984 Order, 44 B.R. 537, denied a motion for reconsideration of Chief Judge Goldhaber's October 31 Order sustaining the trustee's objection to the Union's proof of claim for holiday pay related to the Thanksgiving holiday of 1979 (No. 106). Appellate jurisdiction of these appeals rests in this court pursuant to 28 U.S.C. § 158(a). Because the orders appealed from involve different legal issues and different claims, I will consider them separately.

### A. *Claim No. 106*

The debtor filed its petition for reorganization under Chapter 11 of the Bankruptcy Code on October 16, 1979.[1] On that same day, the debtor dismissed all of its employees. The Union filed a proof of claim for $4,804.72 which it claims is due to all employees of the debtor who were working just prior to October 16, 1979. That proof of claim relates solely to holiday pay for the two-day Thanksgiving holiday of 1979 which the Union alleges is properly due to the employees pursuant to the collective bargaining agreement in effect between the Union and the debtor at the time the debtor filed for bankruptcy.

The portion of that collective bargaining agreement under which the Union seeks to base its claim is found in Article 9 subparagraph 9.8.

> 9.8 Holidays will be paid to employees laid off or on non-occupational sickness or disability absence, providing the employee had worked sometime within forty-five (45) working days prior to the holiday. Employees on occupational disability or occupational illness leave will be paid holiday pay, should the holiday occur within twelve (12) months from the date of such leave.

1. The Chapter 11 petition was later converted into a Chapter 7 proceeding.

2. The trustee originally contested the Union's standing to raise the claims of the employees. However, that issue was resolved against the trustee in light of the decision of the Court of Appeals for the Third Circuit in *In re Altair Airlines, Inc.*, 727 F.2d 88 (3d Cir.1984). The trustee has not pursued this objection on appeal.

The trustee does not dispute that the employees of the debtor are entitled to recover holiday pay but disagrees with the Union's assertion that this holiday pay claim should be accorded priority status over the claims of other unsecured creditors under 11 U.S.C. § 507.[2] The Union contends that this claim should be entitled to priority over other unsecured claims pursuant to subsections (a)(1) or (3) of section 507. Subsection (a)(1) grants first priority to claims for "administrative expenses allowed under section 503(b) of this title, and any fees and charges assessed against the estate under chapter 123 of title 28." Subsection (a)(3) accords third priority to "allowed unsecured claims for wages, salaries, or commissions, including vacation, severance, and sick leave pay—(A) earned by an individual within 90 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first" to the extent of $2000 per employee. Chief Judge Goldhaber rejected the Union's position in an Opinion and Order dated October 31, 1984 and denied the Union's motion for reconsideration in an Opinion and Order dated December 4, 1984.

On appeal, the Union reasserts its contention that the holiday pay claim should receive first or third priority pursuant to section 507. The trustee disputes the merits of the Union's arguments with regard to the priorities established by section 507 and also contends that this court should not consider the merits of the appeal of this claim because the appeal was filed solely from the order of the Bankruptcy Court denying the motion for reconsideration. Therefore, the trustee asserts, the sole issue for this court to consider is whether

In addition, the parties dispute the proper amount of the holiday pay claim. However, that issue was not considered by the Bankruptcy Court due to the parties' representation that, if the Union's claim to priority were to be sustained, they would resolve that dispute by stipulation. Therefore, that question is not raised on this appeal.

the Bankruptcy Court abused its discretion in denying the motion for reconsideration.

Rule 8002 of the Bankruptcy Rules states that a notice of appeal shall be filed within ten days of the date of the entry of the judgment or order appealed from. Rule 8002(a). However, if a timely motion for reconsideration of that order or judgment is filed in the Bankruptcy Court, the time for appeal of the underlying order or judgment is extended to ten days from the entry of an order resolving the motion for reconsideration. Rule 8002(b). *See In re Branding Iron Steak House*, 536 F.2d 299 (9th Cir.1976) (motion for reconsideration delays time within which appeal must be filed); *Indemnity Ins. Co. of North America v. Reisley*, 153 F.2d 296 (2d Cir.1945), *cert. denied* 328 U.S. 857, 66 S.Ct. 1349, 90 L.Ed. 1629 (1946).

■ The trustee's argument that the merits of the October 31, 1984 decision of the Bankruptcy Court are not properly before this court on appeal arises out of a very narrow construction of the notice of appeal filed by the Union. The trustee contends that because that notice of appeal cites solely to the December 4 decision of the Bankruptcy Court, only that December 4 ruling is properly before this court on appeal. However, although the trustee is correct that the notice of appeal does not refer directly to the October 31 Opinion and Order of Chief Judge Goldhaber, the statement of issues on appeal in the Union's designation of issues and record on appeal clearly indicates that the Union wishes to appeal the Bankruptcy Court's conclusions that the Union's claim for holiday pay should not receive priority under either subsection 3 or subsection 1 of section 507(a). Because it is clear from the designation of issues and record filed on appeal that it was the intention of the Union to appeal both the December 4, 1984 order

denying the motion for reconsideration and the October 31, 1984 ruling which led up to the motion for reconsideration, I am unwilling to conclude that the technicality relied upon by the trustee should bar appellate review of the correctness of the Bankruptcy Court's decision on the merits.[3]

1. *Unsecured claims for wages earned within 90 days before filing of the petition*

The sole question raised on this appeal with regard to the Union's assertion that the holiday pay claim under paragraph 9.8 of the collective bargaining agreement should receive priority pursuant to § 507(a)(3) is whether the holiday pay was "earned" within 90 days prior to the filing of the bankruptcy petition. The Union asserts that, under the collective bargaining agreement, the right to holiday pay vests when an employee who worked within forty-five days of the holiday is laid off. Therefore, the Union contends, since the employees were laid off at the time of the filing of the bankruptcy petition, which was within forty-five days of the holiday, the employees had a vested right to the holiday pay at the time the petition was filed.

The trustee argues that holiday pay for the Thanksgiving holiday could not be earned until the holiday had arrived because, as a matter of accounting and logic, one cannot earn wages for a day which has not yet passed. Therefore, the trustee asserts, the holiday pay sought by the Union through claim 106 cannot have been earned prior to the filing of the petition as required by § 507(a)(3).

■ The question when the holiday pay was, or was to be, "earned" in this case is a question of law which turns upon the interpretation of that term in the statute and the construction of the collective bargain-

---

**3.** In addition, the December 4, 1984 decision of Chief Judge Goldhaber considered not only the question whether the issues raised by the motion for reconsideration were proper for such a motion, but also the legal correctness of his underlying October 31 decision. Therefore, to the extent that this appeal is from the December

4, 1984 decision of the Bankruptcy Court denying the motion for reconsideration, it is appropriate to review the legal conclusions announced in Chief Judge Goldhaber's opinion *de novo* and not under the abuse of discretion standard suggested by the trustee.

ing agreement. Thus, on appeal, this court must consider the issue *de novo.*

■ To determine whether a particular claim for wages has been earned within the statutory period prior to the filing of the bankruptcy petition does not involve an inquiry into when the debtor would have been required to pay the claim. Wages are earned within the meaning of § 507(a)(3) if they are owing at the time of the filing of the petition, *In re Public Ledger*, 161 F.2d 762, 769 n. 5 (3d Cir.1947), or if they have accrued at that point. *In re Ad Service Engraving Co.*, 338 F.2d 41 (6th Cir.1964); *United States v. Munro-Van Helms Co.*, 243 F.2d 10 (5th Cir.1957); *Division of Labor Law Enforcement v. Sampsell*, 172 F.2d 400 (9th Cir.1949); *In re Kinney Aluminum Co.*, 78 F.Supp. 565 (S.D.Cal.1948); 3 *Collier on Bankruptcy* ¶ 507.04[e] at 507–30 (1985). In other words, the question for the court is not when, as a matter of accounting, the employee could obtain the funds but when, as a matter of contract, the employee's right to receive those funds was fixed and could not be taken from him by the occurrence of some contingent event. *See United States v. Munro-Van Helms Co.*, 243 F.2d 10, 13 (5th Cir. 1957) ("On that day their rights became unconditional and absolute and these rights then accrued.")

■ The Union asserts that the employees' right to holiday pay for the Thanksgiving holiday accrued when they were laid off within forty-five days of the holiday. However, the right to holiday pay pursuant to paragraph 9.8 of the collective bargaining agreement turns upon (1) whether an employee has worked within forty-five days of the holiday and (2) whether, on the day of the holiday, the employee is laid off. Thus, the date of layoff is only relevant to the recovery of holiday pay under paragraph 9.8 to the extent it establishes that the employee last worked within forty-five days of the holiday. If the employee is laid off within forty-five days of the holiday but is not still laid off on the holiday, the

employee may only qualify for holiday pay if he or she meets one of the other holiday pay provisions in the collective bargaining agreement. For example, an employee who is not laid off or disabled at the time of the holiday must work the last day prior to the holiday and the first day after holiday or establish a reasonable excuse for failure to work on those days. Paragraph 9.6.

Thus, the right to receive holiday pay, even for an employee laid off forty-five days prior to the holiday, turns upon whether the employee is still laid off at the time of the holiday. Therefore, the right to receive holiday pay cannot accrue until the holiday has occurred and all of the elements necessary to recover holiday pay pursuant to paragraph 9.8 can be established. *See Division of Labor Law Enforcement v. Sampsell*, 172 F.2d 400, 402 (9th Cir.1949) (vacation pay contingent upon employee having completed a year's continuous service does not accrue if business closes prior to employee's completion of that year); *In re Kinney Aluminum Co.*, 78 F.Supp. 565 (S.D.Cal.1948) (vacation pay contingent upon employee being on the payroll during the period of May 1 to October 31 did not accrue for employees laid off prior to May 1). *Cf. In re Stunzi, U.S.A., Inc.*, 7 B.R. 401 (Bank.W.D.Va.1980) (vacation pay contingent upon minimum hours of service and years of service as of June 1 did accrue prior to bankruptcy for employees laid off on April 4 since all had completed sufficient years of service and hours of service prior to April 4 and could not be divested of the right to the vacation pay between April 4 and June 1 without just cause).

■ Under these circumstances, the holiday pay for the Thanksgiving holiday could not have accrued or been earned at the time of the filing of the bankruptcy petition. Accordingly, Claim No. 106 cannot be accorded priority status pursuant to 11 U.S.C. § 507(a)(3).[4]

---

4. Although not raised on appeal, the Union argued before the Bankruptcy Court that the holiday pay was "earned" within 90 days prior to the filing of the petition under the provisions of

### 2. *Administrative expense claim*

Section 507(a)(1) accords priority to administrative expenses as defined by section 503(b). The Union contends that the holiday pay claim falls within subsection (1)(A) of section 503(b) which defines administrative expenses as:

> the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case.

It is well settled that a claim for wages or benefits earned post-petition is only recoverable as an administrative expense if the payment conferred some benefit on the debtor-in-possession or trustee. *In re Matter of Jartran, Inc.*, 732 F.2d 584, 587 (7th Cir.1984); *In re Matter of Unishops, Inc.*, 553 F.2d 305, 308 (2d Cir.1977); *In re Mammoth Mart, Inc.*, 536 F.2d 950, 954 (1st Cir.1976). In addition, in its 1947 decision *In re Public Ledger*, 161 F.2d 762 (3rd Cir.1947) our Court of Appeals established the general principles which have been more fully explained in recent years by the First and Seventh Circuits. Those decisions have held that the benefit must result from a relationship which existed between the party seeking payment and the debtor-in-possession or the trustee and cannot result solely from a transaction entered into by the debtor prior to filing for bankruptcy. *See Jartran, supra; Mammoth Mart, supra. But see Unishops, supra.* This rule is consistent with the purpose of the administrative expense priority which is designed to assure that individuals and other businesses which provide goods and services necessary to the operation of the debtor's business will not be reluctant to deal with the debtor-in-possession or trustee due to uncertainty as to the likelihood of payment for post-petition transactions.

The Union contends that the trustee and, prior to the conversion of the matter into a Chapter 7 proceeding, the debtor-in-possession, benefited from the payment of holiday pay for the Thanksgiving holiday of 1979 because the payment would maintain the good will of employees and "retain the loyalty of a full complement of employees and the debtor's ability to resume operations." In support of this argument, the Union cites the decision of the Bankruptcy Court of the Eastern District of Michigan in *In re Fred Sanders Co.*, 22 B.R. 902

§§ 365 or 348 of the Code. Section 365(g) establishes that executory contracts rejected by the debtor-in-possession or the trustee after the petition is filed are deemed to have been breached as of the date just prior to the filing of the petition. Section 348(d) states that a claim which arises after the Chapter 11 petition is filed but prior to conversion into a Chapter 7 proceeding is deemed to be a claim which arose immediately before the date of filing the Chapter 11 petition. Both of these provisions are designed to assure that claims of the nature of those covered by these provisions are included among the group of unsecured prepetition creditors whose rights are to be determined by the Bankruptcy Court and not as post-petition creditors. Once a claim is deemed to be a pre-petition claim pursuant to one of these sections, the priority accorded to that claim depends upon whether the claim falls within one of the priorities established for unsecured claims in section 507. *See generally NLRB v. Bildisco and Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 1198–99, 79 L.Ed.2d 482 (1984).

To determine whether a claim which is deemed to have arisen prior to the filing of the petition fits within one of these priorities, it is necessary to determine whether that claim satisfies the elements of one or more of the priority provisions. The holiday pay claim in this case does not fall within the wage priority of § 507(a)(3) merely because it may be deemed to have arisen prior to the filing of the petition under §§ 365 or 348. To fall within § 507(a)(3) such a claim must not merely arise prior to the filing of the petition but must be for wages earned prior to the filing of the petition. As discussed in the text, the holiday pay was not *earned* until after the petition was filed. Since there is no indication in the statute or in the related caselaw and legislative history that the term "earned" in § 507(a)(3) is to take on anything other than its plain meaning, I cannot conclude that claims which arise prior to the date of the petition are necessarily "earned" on the date they arise.

In addition, a damages claim arising out of breach of an executory contract such as a collective bargaining agreement is not considered a claim for "wages." *In re Schultz & Guthrie*, 235 F. 907 (D.Mass.1916). Therefore, if the holiday pay claim is treated as a claim for damages arising out of breach of an executory contract, it cannot fall within § 507(a)(3)'s priority provision.

(Bkrtcy.1982). The court there concluded that the value of a lease of certain property was properly charged as an administrative expense although the property was not used and the lease was eventually rejected by the debtor-in-possession. However, in that case, the court found that, after the petition had been filed, the debtor-in-possession had entered into an agreement with the lessor under which the lease would remain open for a period of time before the debtor-in-possession would be required to reject or adopt the lease. Therefore, although the property which was the subject of the lease was not actually used by the debtor-in-possession, it was possible to conclude that there had been some value to the debtor-in-possession in allowing the lease to remain unrejected for a period of time while the decision was being made whether the lease should be formally rejected. In the present case, there does not appear to be any evidence that the debtor-in-possession took any action with regard to the dismissal of the employees. However, the record is less than clear on that point.

 Chief Judge Goldhaber's opinion of October 31 concluded that administrative expense priority was not appropriate for the holiday pay claim in that "no services were rendered by the employees after the filing of the petition." Opinion of October 31 at 5. Very likely this statement reflects Chief Judge Goldhaber's finding that the employees had been terminated prior to the filing of the petition and that, as a result, there had been no relationship between the employees and the debtor-in-possession post-petition from which the latter could have derived benefit. It is also possible

that this conclusion followed from a narrow reading of § 503(b)(1) which states that administrative expenses include wages for "services rendered after the commencement of the case." But, wages and commissions for services rendered after the petition has been filed are identified by § 503(b)(1) as merely "included" within the broader class of "actual, necessary costs and expenses of preserving the estate." Thus, once the conclusion is reached that a claim does not fall within the explicitly listed category of wages for services rendered after the commencement of the case, it is still necessary to consider whether the claim would fit within the broader class of actual and necessary costs of preserving the estate. To make that determination, the court must consider (1) whether the claim is for costs incurred post-petition which were necessary for the preservation of the estate or provided some benefit to the estate and (2) whether the claim results from a transaction or relationship between the debtor-in-possession and the creditor as distinguished from expenses resulting solely from pre-petition relationships between the debtor and the creditor. *See Jartran, supra; Mammoth Mart, supra.* Because it is not apparent from the October 31 Opinion of the Bankruptcy Court whether these factors were considered and because the application of these factors necessarily involves some factual determinations which are not properly made by a court for the first time on appeal, I will remand this aspect of Claim 106 to the Bankruptcy Court for consideration in light of this opinion.[5]

---

**5.** The Union suggests that the result reached by the Bankruptcy Court is inconsistent with the purpose of the Code to assure priority treatment of wage and wage-related claims. This suggestion stems from the Union's position that wage claims are necessarily included among those accorded priority either as pre-petition wages under § 507(a)(3) or as post-petition administrative expenses under § 507(a)(1).

Although these provisions are complementary in many instances, they are designed to achieve different ends. The wage provision is established to protect workers who may not have received their checks at the time the petition is

filed although they have provided services prior to that time. The administrative expense provision assures that the debtor-in-possession or the trustee will be able to contract for goods and services necessary to maintenance of the value of the estate. Neither of these provisions guarantees priority to all wage claims (e.g., wages earned prior to 90 days prior to filing of petition are excluded under § 507(a)(3)). Thus, the possibility that a particular wage or wage-related claim may fall outside of both of these categories does not warrant court revision of the language of these carefully-drafted statutory provisions.

### B. *Claim No. 143*

During the pendency of the Chapter 11 proceeding, schedules of claims filed with the Bankruptcy Court by the debtor included a liquidated Union claim which was undisputed and uncontingent. Because the inclusion of a claim of that nature among the claims listed in a schedule filed pursuant to 11 U.S.C. § 521(1) or 1106(a)(2) is "deemed", by statute, a proof of claim, the Union did not file a separate proof of claim with the court. 11 U.S.C. § 1111(a).

The Chapter 11 proceeding was converted to a Chapter 7 proceeding on March 25, 1983. At that time, the Clerk of the Bankruptcy Court distributed a notice to all creditors, including the Union, which stated, in pertinent part:

> A meeting of creditors pursuant to 11 U.S.C. § 341 was held on March 7, 1983.... In order to share in any distribution, a creditor must file a proof of claim. Claims which are not filed within 6 months of the date of the meeting of creditors will not be allowed, except as otherwise provided by law....

The Union asserts that it was led to believe that it was unnecessary to file a proof of claim after the conversion of the proceeding to Chapter 7 statute because the schedules filed in the prior Chapter 11 proceeding had been deemed proof of the Union claim. Therefore, the six-month period provided in the order of the Bankruptcy Court elapsed without a proof of claim being filed on behalf of the Union.

When the Union discovered that the trustee would not pay this claim on the ground that no proof of claim had been filed following the conversion to a Chapter 7 proceeding, the Union filed a proof of claim on June 27, 1984 (No. 143). The trustee objected to this claim as untimely and the Bankruptcy Court sustained the objection in an Opinion and Order dated November 23, 1984. A timely appeal of this decision was taken to this court.

### 1) *The necessity of filing a proof of claim post-conversion*

Rule 1019 of the Rules of Bankruptcy Procedure and 11 U.S.C. § 348 contain specific guidance regarding the treatment of matters converted from Chapter 11 to Chapter 7. The Union contends that it was not required to file a proof of claim because under Rule 1019(d): "All claims filed in the superseded case shall be deemed filed in the chapter 7 case."

The Union argued before the Bankruptcy Court and has argued on appeal that when a Chapter 11 case becomes a Chapter 7 case Rule 1019(d) obviates the need to file new proofs of claim both for those creditors who have actually filed official proofs of claims in the prior Chapter 11 phase and for those creditors whose claims were, pursuant to 11 U.S.C. § 1111(a), "deemed" to have been filed in the Chapter 11 phase because they had been listed in the debtor's schedules as uncontested, uncontingent, liquidated obligations.

The trustee responds that rule 1019(d) applies solely to those proofs of claim actually filed in the Chapter 11 proceeding and not to those claims which were deemed filed through the filing of the schedule of claims. The trustee's analysis of the issue focuses on the language of Rule 3002 of the Bankruptcy Rules:

> (a) An unsecured creditor or an equity security holder must file a proof of claim or interest in accordance with this rule for the claim or interest to be allowed, except as provided in Rules 3003, 3004 and 3005.

Rule 3003 provides that although any creditor may file a proof of claim, the only creditors required to file proofs of claim are those whose claims are not listed in the schedule filed by the debtor or whose claims are listed in that schedule but are disputed, contingent, or unliquidated. In other words, Rule 3003 merely repeats that "deeming" provision found in 11 U.S.C. § 1111(a). But Rule 3003, by its terms, is applicable only to proceedings under Chapter 9 and 11, not to proceedings under Chapter 7.

The trustee contends that Rule 3002's requirement that, in a Chapter 7 proceed-

ing, proof of all claims must be filed, is not abrogated by the fact that this action was converted from a Chapter 11 proceeding to a Chapter 7 matter. The trustee also contends that Rule 1019(d), which relieves creditors of the need to file a proof of claim in the Chapter 7 proceeding if they have done so in the superseded Chapter 11 proceeding, does not expressly include claims which were "deemed" filed in the Chapter 11 case. Thus, the trustee asserts Rule 1019(d) can only be construed to override the requirement of Rule 3002(a) with regard to those claims which were actually filed in the Chapter 11 proceeding while Rule 3002(a)'s mandate that all claims must be filed applies to all other claims in the proceeding once it is converted into a Chapter 7 matter.

The trustee's view of the issue has been adopted by the Bankruptcy Court for the Southern District of Illinois in *In re Humblewit Farms, Inc.*, 23 B.R. 703 (Bkrtcy. 1982). In that case, the court noted that the "deeming" provision of 11 U.S.C. § 1111(a) is consistent with the principles underlying Chapter 11 reorganization proceedings but that those principles do not apply as well to Chapter 7 liquidation matters:

> When Congress enacted § 1111 of the Bankruptcy Code, it intended to make a business reorganization more convenient for both debtors and creditors. Section 1111 assumes that a debtor is familiar with its creditors and is in a position to properly evaluate the claims against it. As such, when the debtor schedules a creditor and does not list the debt as disputed, contingent or unliquidated, the claim is assumed to be correct and deemed filed. This is consistent with the normal reorganization and debtor-in-possession acting as a trustee in evaluating the claims.
>
> This does not mean, however, that since the claim is deemed filed in the reorganization it is filed for all purposes under the Bankruptcy Code. When a case is converted to a liquidation pursuant to Chapter 7, a Trustee is appointed and he becomes the real party in interest. The

Trustee, however, is not as intimately familiar with the claims as a debtor-in-possession, and, as such, proofs of claim must be filed in order to allow the Trustee to properly evaluate the claims.

 I conclude that while the Code and Rules are not crystal clear on this point, the more logical construction of the relevant provisions is that adopted in *Humblewit*. The requirement that all creditors must file proof of their claims either in the prior Chapter 11 proceeding or in the Chapter 7 proceeding after conversion is consistent both with the intent of Congress in establishing separate procedural requirements for Chapter 7 and Chapter 11 proceedings, *Humblewit*, at 705, and with the language of Rule 3002 and 1019. Therefore, I conclude that the failure to file a proof of claim with the Bankruptcy Court after the conversion of this matter from a Chapter 11 to a Chapter 7 proceeding is not excused by the listing of that claim in the schedule of claims filed by the debtor in the Chapter 11 proceeding.

## 2. *Equitable extension of the filing deadline*

The Union also argues that the untimely filing of the proof of its claim should be excused under the provision for enlargement of time found in Bankruptcy Rule 9006 or under the Bankruptcy Court's general equitable powers. The trustee responds that the court's power to extend time for filing proof of a claim is strictly limited by Rule 3002 and that the limitations of Rule 3002(c)'s timeliness requirements are expressly excluded from Rule 9006(b)'s allowance for enlargement of time. *See* Rule 9006(b)(3) (enlargement of time pursuant to Rule 3002(c) is limited to the circumstances provided in that rule).

The Union does not resist the trustee's contention that, if Rule 3002(c) governs the amount of time available for filing proof of a claim in this case, this court is without power to extend that time unless one of the exceptions to Rule 3002(c) is satisfied. *In re Pigott*, 684 F.2d 239 (3d Cir.1982). How-

ever, the Union asserts that Rule 3002(c) is inapplicable to the present issue because the filing of claims after the conversion of a matter from Chapter 11 to Chapter 7 is governed by the more specific Rule 1019.

■■■ However, Rule 1019 does not contain any provisions directly establishing the timetable for filing proof of a claim such as the one asserted by the Union.[6] Therefore, acceptance of the Union's argument would necessitate the conclusion that the Bankruptcy Court may set any timetable it chooses for the filing of proof of a claim such as that of the Union. In light of the quite clear intention of Congress in enacting the Bankruptcy Code and of the Supreme Court in establishing the Bankruptcy Rules that bankruptcy matters be pursued expeditiously and efficiently, the Union's position, which is not supported by the text of any rule or statutory provision, seems inappropriate. More logical is the view that Rule 1019 is intended to provide special rules for those matters unique to cases converted from Chapter 11 to Chapter 7 proceedings but that when Rule 1019 does not expressly apply to an issue in a converted proceeding the general rules governing Chapter 7 proceedings should be applied to resolve the question. Therefore, the lack of an explicit provision in Rule 1019 governing the time within which the Union's claim and similar claims must be filed warrants the use of the timing provisions of Rule 3002 which are generally applicable to Chapter 7 cases.[7]

■■■ Because the Union's claim was not filed within the time allowed by Rule 3002(c) and because the Union does not assert that it is entitled to an extension of time under one of the express exceptions to the time bar of Rule 3002(c), the Bankruptcy Court had no power under the rules to allow an untimely filing of the Union's claim. Moreover, the Bankruptcy Court has no general equitable authority to override the strict time limits of Rule 3002(c). *In re Pigott*, 684 F.2d 239 (3d Cir.1982). Consequently, the Bankruptcy Court correctly sustained the objection to Claim No. 143 because the claim was not timely filed and the court had no authority to allow the untimely filing of the proof of claim.[8]

An order reflecting these rulings follows.

---

**6.** Rule 1019 does include a subsection which establishes time requirements for filing of proof of those claims which arose after the petition under Chapter 11 was filed but prior to the conversion to a Chapter 7 proceeding. Rule 1019(7). The Union has not asserted that this portion of Rule 1019 establishes the time period under which its proof of claim should have been filed. However, such as argument would not assist the Union's cause on this appeal. The Union's claim was not filed within the time set in Rule 1019(7). Although subsection (8) of Rule 1019 expressly provides for filing of claims outside of the time limits found in subsection (7), late filed claims may only be asserted against surplus assets of the estate as provided by Rule 3002(c)(6). Thus, claims filed outside of the time limits of subsection (7) may only be collected if assets remain in the estate after all properly filed claims have been paid in full. *See* Advisory Committee Note to Rule 1019.

**7.** Rule 9006(b), which governs extensions of time under the Bankruptcy Rules, refers to both Rule 1019 and Rule 3002. In Rule 9006(b)(2), Rule 1019(2) is included among a list of rules whose timetables may not be extended, while in Rule 9006(b)(3), Rule 3002(c) is listed as one of a number of rules whose timetables may only be extended for a limited set of reasons.

The Union argues that these separate references to Rule 1019 and Rule 3002 establish that these rules contain independent timetables and that the timetables in Rule 3002 do not affect the types of cases covered by Rule 1019. However, the reference to Rules 1019(2) and 3002(c) merely assures that the specific timetables set in those rules are not extended for improper reasons. They do not provide any evidence that Rule 1019 contains implicit authority for unique timetables for filing claims in a converted case.

**8.** Were I to accept the Union's contention that Rule 1019 allows the Bankruptcy Court to fix a time period within which claims of the nature of that asserted by the Union must be filed, I could not conclude that the Bankruptcy Court erred in this case. The Bankruptcy Court issued a notice of the conversion of this matter from Chapter 11 to Chapter 7. That notice expressly provided that all claims be filed within six months of the creditors' meeting which had taken place early in March, 1983. This time period is the same as that fixed under Rule 302, the predecessor to Rule 3002 applicable at the time of conversion in this case. *See* note 2, Opinion of Emil F. Goldhaber, November 23, 1984. The proof of claim filed by the Union was filed well after the close of this six-month period. Thus, the Union's assertion that its

## ORDER

For the reasons stated in the accompanying Memorandum, it is hereby ORDERED that:

1) Chief Judge Goldhaber's ruling of December 4, 1984, relating to Claim No. 106 is AFFIRMED to the extent it denied priority to that claim as wages and is VACATED and REMANDED for reconsideration in light of this Memorandum with regard to the ruling that Claim No. 106 should not be accorded priority as an administrative expense.

2) Chief Judge Goldhaber's ruling of November 23, 1984, relating to Claim No. 143 is AFFIRMED.

proof of claim should be treated as timely depends upon its assumption that the Bankruptcy Court would be authorized to extend the time it could fix for filing of claims. In light of the strict time limits fixed elsewhere in the Bankruptcy Rules for filing proof of claims and the narrow exceptions to those time limits and, particularly in light of the views expressed by the Court of Appeals for the Third Circuit in *In re Pigott,* 684 F.2d 239 (3d Cir.1982) ("expeditious administration was a prime objective of the [Code] ... and ... periods of limitation set up were to be strictly enforced"), I cannot conclude that the Bankruptcy Court could extend the time for filing proof of claims for any reasons beyond those allowed under Rule 3002. To allow the court to extend time for filing of proof of claims in a conversion case for broadly defined equitable reasons and not in any other type of bankruptcy proceeding might produce more equitable results in some cases but would create an anomaly in the operation of the bankruptcy courts which is not supported in law or logic.