## In re VALLEY CONCRETE CORPORATION, Debtor.

**Bankruptcy No. 90–10118.**

United States Bankruptcy Court,
D. Rhode Island.

Aug. 20, 1990.

Gregory W. Hamilton, Winograd, Shine & Zacks, P.C., Providence, R.I., for debtor.

Richard M. Peirce, Roberts, Carroll, Feldstein & Peirce, Providence, R.I., for Teamsters Local Union No. 251.

## DECISION AND ORDER

ARTHUR N. VOTOLATO, Jr.,
Bankruptcy Judge.

Heard on August 9, 1990 on the debtor's objection to the Motion of Teamsters Local Union No. 251 ("Teamsters") "to grant vacation pay to members of Teamsters Local Union 251."

At issue is whether employee claims for vacation pay, as provided for in their collective bargaining agreement, (*see* Union's Exhibit A, Art. X) are administrative expense claims pursuant to §§ 503(b) and 507, or whether said claims were "incurred" prior to the filing of the Chapter 11 petition (January 31, 1990), in which event they would not enjoy any priority status.

Article X, section (b) of the collective bargaining agreement provides that:

An employee who has been on the payroll for one or more years, but less than five (5) years, shall each year, on the anniversary date of his employment be entitled to one week's vacation with pay, if he has actually worked one hundred ten (110) days during the last year of his employment. If he has worked less than one hundred ten (110) days, he shall receive one-half day's pay for each month in which he actually worked twelve (12) days or more, but not in excess of five (5) days in any year.

Section (f) provides that where there is disagreement as to the exact anniversary date, "the Employer shall pay the vacation pay on or before July 1st each year."

The Teamsters' position is that employees who have continued to work, post-petition, with the understanding that the collective bargaining agreement is still in effect, and who have actually worked 110 days during the last year, are entitled to vacation pay, as of July 1, 1990, as an administrative expense.

Conversely, the debtor argues: that once an employee has worked 110 days from July 1, 1989, he[1] has, as of that time, "earned" his right to vacation pay for the following year; that because all of the employees involved here have worked for 110 days prior to the date of the petition, their claims for vacation pay were incurred pre-petition; and that therefore said claims are general unsecured claims, not entitled to priority. In support of this position, the debtor relies on *In re Crouthamel Potato Chip Co.*, 52 B.R. 960 (E.D.Pa.1985), which holds that "[w]ages are earned within the meaning of § 507(a)(3) if they are owing at the time of the filing of the petition, *In re Public Ledger*, 161 F.2d 762, 769 n. 5 (3rd Cir.1947), or if they have accrued at that point." *Id.* at 965 (other citations omitted).

 We agree with the legal principle espoused in *In re Crouthamel Potato Chip Co., supra,* but on the facts before us, find it distinguishable. Article X of the collective bargaining agreement provides that if the employee actually works 110 days during the last year of his employment, he shall "be entitled" to one week's vacation, with pay, on his anniversary date, or on July 1. Interpreting the agreement vis-a-vis Sections 503(b) and 507 of the Bankruptcy Code, we rule that the claim has not accrued until the employee is entitled to receive such funds, i.e. when he goes on vacation. To the extent that *In re Crouthamel Potato Chip Co., supra,* may hold to the contrary, we reject it.

In addition, based on the record before us, on independent grounds, we conclude that the decision by the drivers to continue working for the debtor, post-petition, is a benefit to the estate which entitles them to an administrative expense claim for vacation pay under § 503(b)(1)(A). We base this conclusion on the testimony of James Boyajian, the President and Business Agent of Teamsters Local Union No. 251, to the effect that the employees relied upon the terms of the union contract, including their entitlement to vacation pay, in continuing to work for the debtor post-petition, and that if they were informed or had been aware of the debtor's intention not to pay vacation pay, they would have initiated a strike against the company "which would have ended this Chapter 11 case."

Exercising a fair degree of perception, as it turns out, the drivers attempted to get a commitment from the company back in February, and it is because of the debtor's failure to respond to the Teamsters' specific inquiries dated 2/27/90 and 6/4/90 (*see* Union's Exhibits B and C), that the debtor (employer) is estopped from now arguing that the decision of the drivers to continue to work post-petition (which decision was induced and procured by the debtor's silence) does not benefit the estate or constitute an expense of preservation under § 503(b).

Accordingly, it is our conclusion that vacation pay for Local Union 251 employees, for the calendar year 1990 is an administrative expense under 11 U.S.C. § 503(b)(1)(A).

Enter Judgment accordingly.

---

1. We refer to the employees herein only as "he", because there are no women employees involved in this controversy.