**DIE & MOLD, INC.,**
Defendant-Appellant,

v.

**Paul WESTERN, Plaintiff-Appellee.**

No. 1–982A256.

Court of Appeals of Indiana,
First District.

April 26, 1983.

Peter Campbell King, Cline, King, Beck, Harrison & Runnels, Columbus, for defendant-appellant.

Dennis M. Stark, Eynon & Stark, P.C., Columbus, for plaintiff-appellee.

NEAL, Judge.

STATEMENT OF THE CASE

Defendant-appellant Die & Mold, Inc. (Die & Mold) appeals an adverse judgment

rendered in the Jackson County Court in favor of plaintiff-appellee Paul Western (Western) for vacation pay.

We affirm.

## STATEMENT OF THE FACTS

The facts in support of the findings of fact and conclusions of law are as follows: Western was employed by Die & Mold on April 18, 1967, and worked continuously as a polisher until February 27, 1981, upon which date he was discharged because of the closing of the department. Western testified that when he was hired, one John Gall, who employed him, informed him orally of the vacation pay policy: after one year the employee receives one week paid vacation; after five years the employee receives two weeks paid vacation; and after ten years the employee receives three weeks paid vacation. All vacations were required to be taken between June 15 and October 15. No other terms or conditions concerning vacation pay ever were made known to him. There was no written employment contract, manual or any other written instrument given or made known to him except a 3″ × 5″ card containing the above information which was posted on the bulletin board. Western took his vacations in accordance with the above policy through all the years he was employed. Other employees testified essentially to the same above information.

Die & Molds' version of the vacation pay policy was advanced by the testimony of Geneva Timmons, a vice president, who was Die & Mold's only witness. She acknowledged the absence of any written policy, and stated that any policy concerning vacation pay would have been communicated orally to the employees. She stated that an employee was eligible for vacation pay after the anniversary date of employment, but acknowledged that exceptions had been made. One was Western himself, who took one portion of his vacation in January. She stated that they did not prorate vacations. When asked to summarize the vacation policy of Die & Mold, she replied:

"The way I would describe it, we are a job shop and the way my definition is, that you would earn your vacation by working your year. In a job shop, we have . . . the men are paid well, that they are paid time and a half when they work long hours and I feel like . . . you would earn your vacation by putting in a year's work.

\*      \*      \*      \*      \*      \*

Our vacation policy is that it has to be after your anniversary date."

She did not contend that her impressions were ever communicated to the employees, or cite any instances where an employee was refused vacation pay because of the application of her version of the rule. She never testified that there was ever a management decision, orally or otherwise, to provide for or apply such policy for vacation pay where an employee was terminated through no fault of his own prior to his anniversary. There was evidence that employees took vacations prior to their anniversary, and were paid after their anniversary, or at the time.

The trial court, in special findings of fact and conclusions of law, found that Die & Mold had a vacation policy as stated by Western, but that it had no policy concerning vacation pay at the termination of an employee's employment. The court awarded pro rata vacation pay of 88 percent from the employment anniversary date of April 18 until the date of discharge on February 27, statutory penalty of $1.00 per day for 260 days, and attorney fees of $1,059.50, the latter two items by authority of Ind.Code 22–2–4–4.

## ISSUES

The following issues are presented on appeal:

I. Did the trial court commit error in finding that as a matter of law, that the plaintiff-appellee, Paul Western's, hereinafter designated as "Western," vacation pay is an element of an employee's labor and that Ind.Code § 22–2–4–4 (Burns 1974) applied to this cause of action?

II. Did the trial court commit error in finding that Die & Mold did not present sufficient facts as a matter of law to support the defense of failure of consideration?

III. Did the trial court commit error in finding that Western was entitled to an accrual of his three week vacation pay from Die & Mold in the amount of eighty-eight percent (88%) upon his termination?

IV. Did the trial court commit error in finding as a matter of law that Western's vacation pay is an element of his compensation for labor performed irrespective of Die & Mold's vacation policy?

V. Did the trial court commit error in finding as a matter of law that the law is with Western?

All of the assignment of errors are interrelated and therefore we will discuss them together.

## DISCUSSION AND DECISION

■ Much, if not all, of Die & Mold's argument is premised upon the assumption that it conclusively proved at trial that it had a policy, and an agreement with its employees, that if they had been separated prior to their anniversary date, they were not entitled to the vacation pay. Our reading of the evidence does not bear this out. The testimony of Timmons, the only Die & Mold officer to testify, is equivocal at best on that point. Not even Timmons testified that such a policy was communicated to Western, or other employees. Other testimony reflects that no such policy or agreement existed, and the trial court so found. Where a trial court has made findings of fact and conclusions of law, the Court of Appeals will consider only that evidence and reasonable inferences therefrom which support the judgment, and will set aside the findings and conclusions only where they are clearly erroneous. *Barr v. Sun Exploration Co., Inc.*, (1982) Ind.App., 436 N.E.2d 821. As a basis of discussion we accept the trial court's finding that after ten years Western was entitled to three weeks vacation with pay, and that Die & Mold had no personnel policy pertaining to the payment of accrued vacation pay upon termination of an employee's employment.

This particular question has not been addressed in Indiana. It is well established in other jurisdictions, however, that a vacation with pay is, in effect, additional wages. *In re Wil-Low Cafeterias, Inc. v. Siegel*, (2nd Cir.1940) 111 F.2d 429; *Monroe v. Penn-Dixie Cement Corporation*, (N.D.Ga.1971) 335 F.Supp. 231; *General Tire and Rubber Co. v. Local 512*, (D.R.I.1961) 191 F.Supp. 911; *In re Capital Service*, (S.D.Cal.1955) 136 F.Supp. 430. *Pattenge v. Wagner Iron Works*, (1957) 275 Wis. 495, 82 N.W.2d 172; *Livestock Feeds, Inc. v. Local Union No. 1634*, (1954) 221 Miss. 492, 73 So.2d 128; *Jones v. District Parking Management Co.*, (1970) D.C.App., 268 A.2d 860; *Computer Sciences Corporation v. Ferguson*, (1968) Cal.App., 74 Cal.Rptr. 86; *Botany Mills, Inc. v. Textile Workers Union of America*, (1958) 50 N.J.Super. 18, 141 A.2d 107; *Division of Labor Law Enforcement v. Ryan Aeronautical Co.*, (1951) Cal.Super., 106 Cal. App.2d Supp. 833, 236 P.2d 236; *See McKay v. Stewart*, (1969) 59 Misc.2d 380, 298 N.Y. S.2d 829; 56 C.J.S. *Master and Servant* § 96.

■ Such a result is not incompatible with Ind.Code 22–2–9–1(b) which defines wages as follows:

"The term 'wages' means all amounts at which the labor or service rendered is recompensed, whether the amount is fixed or ascertained on a time, task, piece or commission basis, or in any other basis, or in any other method of calculating such amount."

Vacation pay is in the nature of deferred compensation in lieu of wages earned each week the employee works, and is payable at some later time. *General Tire and Rubber Co., supra*. An agreement to give vacation pay to employees made before they perform their service, and based upon the length of service and time worked is not a gratuity but rather is in the form of compensation for services. And when the services are rendered, the right to receive the promised

compensation is vested, as much as the right to receive wages or other forms of compensation. *Jones, supra.* The fountainhead case in this area of the law is *In re Wil-Low Cafeterias, Inc., supra,* which analyzes the legal relations surrounding vacation pay, as follows:

"The pay for a vacation completely earned prior to the discharge we think stands in as good a position [as regular pay.]

\* \* \* \* \* \*

A vacation with pay is in effect additional wages. It involves a reasonable arrangement to secure the well being of employees and the continuance of harmonious relations between employer and employee. The consideration for the contract to pay for a week's vacation had been furnished, that is to say, one year's service had been rendered prior to June 1, so that the week's vacation with pay was completely earned and only the time of receiving it was postponed. If the employer had discharged the employee wrongfully after the latter had done the work necessary to earn a vacation he could not be deprived of the benefits due him." (Citations omitted.)

111 F.2d at 431–32.

*In re Wil-Low Cafeterias, Inc.* did not address the particular situation we have here, where the employment was terminated prior to the anniversary date, but *Livestock Feeds* did. In the latter case, the collective bargaining agreement provided, as here, that where an employee had not less than one year and not more than five years continuing service, he would have one week paid vacation. For five years service and more he would have two weeks paid vacation. All vacations were required to be taken in June, July, August and September. The court stated:

"In the case at bar, all employees who had been in the service of the appellee for not less than one year prior to June 1, 1951, qualified for vacation pay. They were entitled, therefore, to vacation pay as of June 1, 1951. The pay to which they were entitled on that date constitut-

ed, as has been shown, additional wages, and necessarily the same constituted additional wages earned for one year prior to June 1, 1951. Beginning June 1, 1951, the employees entered upon service for an additional year, for which they would have been entitled to full vacation pay to June 1, 1952, had their employment not been sooner terminated. Since they entered upon the performance of their employment on June 1, 1952 under the provisions of the collective bargaining agreement, they thereupon became entitled to such wages as they earned from that date to the date of the termination of their employment and it necessarily follows that if vacation pay constitutes wages, they could likewise be entitled to their pro rata share of the vacation pay earned by them from June 1, 1951 to the date of the termination of their employment by the employer, which was February 29, 1952."

221 Miss. at 503–04, 73 So.2d 128. In *Livestock Feeds,* the court, citing *Haag v. Rogers,* (1911) 9 Ga.App. 650, 72 S.E. 46, held that such a result would be reached even if the business was terminated.

■ Die & Mold has cited no authority contrary to the above reported cases, but merely attempts to distinguish them on their facts. We are of the opinion that the principles are applicable here. Much of its argument is fashioned on the proposition that Western was required to pass the anniversary date of employment, April 18, or lose all of his vacation pay. And since he was terminated prior to that date there was a failure of consideration. Die & Mold cites *Dove v. Rose Acre Farms, Inc.,* (1982) Ind. App., 434 N.E.2d 931, and attempts to analogize it to the case at bar. *Dove* concerned a peculiar, very specific bonus contract which was apart from the regular employment contract. The bonus contract was wholly voluntary, and non-job dependent. We held that the terms must be complied with in order to receive the bonus pay. Here, the evidence and the finding of the court disclose no specific terms or policy. Had such an agreement or published policy

existed it would be enforceable. Further, vacation pay and bonus contracts are not treated similarly in the law as the former is part of regular compensation.

Die & Mold also argues that the trial court fashioned a new contract for the parties by giving Western a pro rata share of his vacation pay since there was no agreement to that effect, citing *Pepsi-Cola General Bottlers, Inc. v. Woods*, (1982) Ind.App., 440 N.E.2d 696. It needs no citation of authority to demonstrate that an employee is entitled to his wages up to the time of termination. Since vacation pay is additional wages, earned weekly, where only the time of payment is deferred, it necessarily follows that, absent an agreement to the contrary, the employee would be entitled to a pro rata share of it to the time of termination.

Die & Mold also cites *Morton v. E-Z Rake, Inc.*, (1979) Ind.App. 397 N.E.2d 609. That case merely affirmed a trial court's negative judgment as to whether unused annual vacation pay accumulated and was payable at termination. It is not helpful here.

■ Finally, Die & Mold challenges the applicability of Ind.Code 22–2–4–4 which provides:

> "Every corporation, company, association, firm or person who shall fail for ten (10) days after demand of payment has been made to pay employees for their labor, in conformity with the provisions of this act [22–2–4–1—22–2–4–6], shall be liable to such employee for the full value of his labor, to which shall be added a penalty of one dollar ($1.00) for each succeeding day, not exceeding double the amount of wages due, and a reasonable attorney's fee, to be recovered in a civil action and collectable without relief."

Die & Mold contends that since the term "vacation pay" is not used in the statute it is inapplicable to the case at bar in awarding a penalty and attorney fees. From what we have held, vacation pay is wages. We are of the opinion that the intent of the section is clear, and there is no need for the application of rules of construction.

For the above reasons this cause is affirmed.

Judgment affirmed.

ROBERTSON, P.J., and RATLIFF, J., concur.