In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-2744

LISA HICKS,

*Plaintiff-Appellant,*

*v.*

AVERY DREI, LLC and CHANCE FELLING,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:07-cv-01215-JMS-DML—**Jane E. Magnus-Stinson**, *Judge.*

ARGUED MAY 13, 2011—DECIDED AUGUST 17, 2011

Before CUDAHY, FLAUM, and KANNE, *Circuit Judges*.

KANNE, *Circuit Judge.* Lisa Hicks worked for Chance Felling and his hotel management company, Avery Drei, LLC, as a security guard and then as a desk clerk during the construction and operation of a new hotel in the Indianapolis area. After being terminated from her job as a desk clerk, Hicks sued Felling and Avery Drei (the "Defendants") seeking unpaid wages, overtime pay, and accrued vacation pay. The district court granted the De-

fendants' motion for judgment as a matter of law on Hicks's vacation pay claim and a portion of their similar motion on her overtime pay claim. The jury returned a verdict in the Defendants' favor on the remaining portion of her overtime wages claim. Hicks appeals, challenging both the district court's denial of her pretrial motion to prevent the Defendants' introduction of belated evidence of cash payments and its interpretations of the law in granting the judgments as a matter of law. We affirm.

## I. BACKGROUND

Hicks began working for Felling as a security guard at the site of a hotel construction project in July 2006. She was an hourly employee, and Felling regularly paid her in cash for her services. Once the hotel opened in October 2006, Hicks transitioned to working as a front desk clerk. Felling was the owner and manager of Avery Drei, the company that operated the hotel, so he continued to serve as Hicks's employer at her new job. As a desk clerk, she received her hourly wages by check instead of cash. The parties disagree, however, about her overtime pay at that job. Hicks alleges she was never paid for overtime work at either her hourly rate or at an overtime rate. Felling alleges that he gave Hicks cash payments for overtime earnings, even though he neither requested nor authorized her to work overtime. For reasons immaterial to this appeal, the Defendants terminated Hicks's employment in April 2007, after less than a year of work with the hotel.

In September 2007, Hicks sued the Defendants in a proposed class action to recover compensation allegedly

owed for the work she and similarly situated employees performed at the hotel. After her former coworker was dismissed from the suit and her counsel abandoned attempts to certify a class (despite twice requesting and receiving extensions of time to file motions for class certification), Hicks proceeded in the case as the sole plaintiff seeking three forms of compensation. In Count I she claimed the Defendants owed her overtime wages pursuant to the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq*. In Count II she sought payment of earned but unpaid hourly wages pursuant to Indiana's Wage Payment Statute, Indiana Code § 22-2-5-1 *et seq*. Finally, in Count III she sought payment of accrued vacation pay under Indiana's Wage Claims Statute, Indiana Code § 22-2-9-1 *et seq*. The case festered for three years, with little activity on the docket until February 2010, when the case was set for trial in June 2010.

Also in February 2010, Hicks sent a letter to Defendants' counsel requesting them to supplement responses to discovery requests originally answered in 2008. The Defendants failed to supplement their responses in accordance with Hicks's request in a timely manner, leading the district court to grant Hicks's motion to compel in May 2010. The Defendants then supplemented their responses to the interrogatories and requests for production specified by Hicks. But they also included an unsolicited supplemental response to Hicks's Interrogatory Number 12. That interrogatory requested that the Defendants identify each instance and the amount of cash payments made to Hicks during her employment, and the Defendants had originally responded in 2008 with

seven instances of cash payments made in August and September 2006, when Hicks was working as a security guard. In responding to the motion to compel on June 1, 2010, the Defendants indicated they had made six additional cash payments to Hicks between December 8, 2006, and April 6, 2007, when Hicks was working as a desk clerk.

Hicks promptly (still on June 1, 2010) moved in limine to bar the introduction of any evidence of the alleged additional payments during trial. She argued that the tardy disclosure mandated exclusion under the Federal Rules of Civil Procedure because it severely prejudiced her case preparations. The district court was not convinced by her counsel's assertion that indulging this disclosure—a "mere twenty days" before trial—amounted to "trial by ambush." After discussing Hicks's motion to exclude in its final pre-trial conference on June 17, 2010, the district court ruled that the Defendants could introduce evidence of the payments during trial.

Trial commenced on June 21, 2010. When Hicks rested her case the following day, the Defendants moved for directed verdicts in their favor on Hicks's FLSA overtime and Indiana Wage Claims vacation pay claims. The district court granted the motion in part, having determined that the evidence presented by Hicks could not, as a matter of law, support a jury verdict in her favor. On the same day, the jury returned a verdict against Hicks on the remainder of her overtime wages claim (the only claim remaining in the trial), and the district court subsequently entered judgment on that verdict.

Hicks timely filed a notice of appeal and then moved for a waiver of transcription fees. The Defendants opposed the motion, arguing that she did not fulfill the district court's request that she proffer reasons why her issues on appeal were not frivolous. The district court requested additional briefing from Hicks regarding the necessity of a transcript to appeal the directed verdict on part of her FLSA claim, but it denied the motion as to any portions of the transcript relating to her vacation pay claim, as it found that claim to be frivolous and without any evidentiary foundation. Hicks moved for reconsideration of the court's vacation pay decision and submitted information regarding her FLSA appeal. The district court waived the transcription fee for the testimony relevant to her FLSA claim, but denied Hicks's motion for reconsideration, noting that Hicks "herself testified at trial that she was not entitled to vacation pay." Hicks then procured only a partial transcript (comprising only those portions for which the transcription fee was waived), and she submitted only a portion of that partial transcript to this court in support of her appeal.

## II. ANALYSIS

Hicks presents three issues on appeal. First, she contends that the district court erred by denying her motion to exclude evidence of additional cash payments the Defendants allegedly made to her. Second, she contends that the district court erred in granting a directed verdict in the Defendants' favor on part of her FLSA claim for two reasons: the district court erred in its enterprise

coverage determination, and there was sufficient evidence for a jury to find that the Defendants were within the FLSA's coverage. Third, she contends that the district court erred in granting a directed verdict in the Defendants' favor on her vacation pay claim because there was no evidence that Defendants had a published policy departing from the state's default rule of pro-rata vacation accrual.

*A. Vacation Pay Claim*

We deal with Hicks's vacation pay issue first because it is frivolous. Hicks testified at trial that she and Felling agreed that she would not earn vacation time until after having worked for over a year. The district court entered a directed verdict on this claim because of that testimony:

> There is no dispute in [Hicks's] mind that this is not a circumstance where she was earning a little bit a month. She had to be there a year to get a week. She was terminated before that year. . . . [T]he Defendant is entitled to judgment as a matter of law with respect to the vacation claim because of the agreement with respect to vacation pay that the undisputed evidence establishes in this case.

(Directed Verdict Tr. at 16-17.) We review *de novo* the district court's grant of judgment as a matter of law in the Defendants's favor on Hicks's vacation pay claim. *Marcus & Millichap Inv. Servs. of Chicago, Inc. v. Sekulovski*, 639 F.3d 301, 311 (7th Cir. 2011).

On appeal, Hicks renews the argument she made in a motion to reconsider below: in the absence of a *published* policy to the contrary, covered workers in Indiana earn vacation time pro rata. She cites *Die & Mold, Inc. v. Western*, 448 N.E.2d 44 (Ind. Ct. App. 1983), in support of that proposition, but the case does not support her argument. *Die & Mold* did hold that because "vacation pay is additional wages, earned weekly, where only the time of payment is deferred, it necessarily follows that, *absent an agreement to the contrary*, the employee would be entitled to a pro rata share of it to the time of termination." *Id.* at 48 (emphasis added). But unlike in *Die & Mold*, *see id.* at 46, the unequivocal evidence in our case showed that Hicks and the Defendants had "an agreement to the contrary" where each understood that Hicks was not earning vacation compensation throughout her employment. "In other words, she never rendered the services necessary to have her interest in vacation pay vest." *Williams v. Riverside Cmty. Corr. Corp.*, 846 N.E.2d 738, 748 (Ind. Ct. App. 2006).

Hicks neither addresses this foundation for the district court's reasoning nor explains the contradiction between her testimony and her position on appeal. Although she argues that the Defendants introduced no evidence that they had a "published policy" stating that employees would not earn vacation time pro-rata through their first year of employment, *Die & Mold* does not require that all agreements be written or memorialized in printed publications. Hicks's argument is meritless, and we find no error in the district court's

determination that "there is absolutely no evidentiary foundation" for her claim.

B. *Admission of Evidence Regarding Cash Payments*

We next address Hicks's contention that the district court erroneously denied her motion in limine to prevent the Defendants from introducing newly disclosed evidence of additional cash payments. She alleges that this error entitles her to a new trial without the admission of that evidence. As she did in her motion below, Hicks argues that she prepared her case on the theory that she'd been paid only by check while working as a desk clerk and that the Defendants' belated supplemental response alluding to evidence of cash payments during that time was so prejudicial as to warrant exclusion of that evidence. She makes the unsupported allegation that the Defendants' supplemental response showing additional payments was "a baseless fabrication concocted by [the Defendants] to confuse this court." (Reply Br. at 8.)

We would ordinarily review the district court's denial of Hicks's evidentiary motion in limine for an abuse of discretion, as "decisions regarding the admission and exclusion of evidence are peculiarly within the competence of the district court." *Aldridge v. Forest River, Inc.*, 635 F.3d 870, 874 (7th Cir. 2011) (*quoting Von der Ruhr v. Immtech Int'l, Inc.*, 570 F.3d 858, 862 (7th Cir. 2009)). But our review is significantly hampered by the absence of any record of the district court's reasoning below. Hicks requested transcripts from the trial, but she did not

request transcription of (or even waiver of the transcription fee for) the oral arguments or bench ruling on her motion in limine.[1] Her failure to abide by Federal Rule of Appellate Procedure 10 leaves us without a meaningful basis of review and results in a forfeiture of her argument. *See* Fed. R. App. P. 10(b)(2); *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 731 n.10 (7th Cir. 2003). Further, Hicks's brief does not describe—let alone address or refute—any of the district court's reasons for denying her motion to exclude, and she cites only one inapposite case in support of her position. *See* Fed. R. App. P. 28(a)(9); *Smith v. Ne. Ill. Univ.*, 388 F.3d 559, 569 (7th Cir. 2004). Her evidentiary challenge is therefore doubly forfeited.

We could review her forfeited contention for plain error, but we rarely apply that doctrine in civil cases, and our assessment shows that hers is not a case with exceptional circumstances or one where a miscarriage of justice could occur if we decline to exercise our discretion and apply plain error review. *See Jackson v. Parker*, 627 F.3d 634, 640 (7th Cir. 2010). Hicks asserts that she prepared her entire case on the assumption that no cash payments from her desk clerk tenure would be discussed at trial, that the Defendants violated discovery rules by waiting so long, and that finding out twenty days before trial that the evidence would be presented

---

[1] Nor did Hicks indicate that transcription was unavailable due to the absence of an audio recording or machine-aided shorthand record of the hearing. *See* Fed. R. App. P. 10(c).

left her without time to prepare her case.[2] Yet Hicks does not explain why it was an abuse of discretion to admit the evidence; rather, she provides only a conclusory statement that the "tardy disclosure of this vital information severely prejudiced Employee's ability to prosecute this action as the circumstances amply demonstrate." (Appellant's Br. at 8.) We cannot agree. The alleged payments would have been made to Hicks, so she would have had knowledge of them or of their non-existence. She might have been surprised by evidence thereof, but we perceive no reason why refutation of that evidence would have required extraordinary preparation that could not have been accomplished in a "mere" twenty days. Perhaps she believed the evidence was prejudicial simply because it undermined her case. Indeed, her request for a new trial where

---

[2] The appellees indicated that Hicks's counsel had actual knowledge of the purported cash payments at least as early as May 20, 2010, as they were discussed during a settlement conference before Magistrate Judge McVicker Lynch. Hicks did not deny this knowledge. Her counsel instead moved to strike the comment—because the disclosure of that information "clearly" violated Local Alternative Dispute Resolution Rule 1.6—and requested that we impose sanctions for the violation. Counsel is incorrect, as the local rules he attempts to invoke "clearly" state: "Settlement conferences conducted by the Judges and Magistrate Judges of the Court are not governed by these Rules." S.D. Ind. Local A.D.R. Rule 1.1. Regardless, the important point is that counsel likely had knowledge of the Defendants' intent to prove the additional payments at least a month in advance of trial.

that evidence would be excluded strongly suggests her underlying objection: if "trial by ambush" was her actual concern, the additional preparation time afforded by a remand for retrial would certainly cure any prejudice arising from the timing of the disclosure. Her requested remedy convinces us that the alleged prejudice arises from the evidence's power to persuade and not the timing of its disclosure. That is not a kind of "prejudice" that warrants exclusion. *See Cobige v. City of Chicago, Ill.*, ___ F.3d ___, ___, 2011 WL 2708756, at *4 (7th Cir. July 12, 2011) ("This kind of effect is not 'prejudice' at all—not unless we count as 'prejudice' all evidence that undermines the other side's contentions . . . .").

We also cannot conclude that a miscarriage of justice likely occurred. We acknowledge that the Defendants did not timely supplement their discovery responses and even had to be compelled by the district court to respond. *See* Fed. R. Civ. P. 26(e)(1). Hicks repeatedly—but selectively—quotes language from Federal Rule of Civil Procedure 37(c) to argue that belated disclosure prevents admission of any evidence of the additional cash payments: "a party that '. . . fails to provide information . . . as required by Rule 26(a) or (e) . . . is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or <u>at a trial</u> . . . .' Rule 37(c)(1) (emphasis added)." (Appellant's Br. at 10; Reply Br. at 8.) Her incomplete quotation is misleading. In a salient segment Hicks omits, the Rule goes on to qualify the proscription on use:

> . . . *unless the failure* was substantially justified or
> *is harmless*. In addition to *or instead of* this sanc-

tion, the court, on motion and after giving an opportunity to be heard: (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37(c)(1) (emphases added). The district court responded appropriately to the Defendants' delay by ordering the Defendants to pay a portion of Hicks's attorney's fees and by informing the jury of the allegedly late disclosure and their answering questions about the circumstances. *See* Fed. R. Civ. P. 37(c)(1). It could have excluded the additional cash payment evidence, but Hicks offers no convincing reason why the alternative sanctions chosen by the district court were not sufficient remedies—let alone any indication that a miscarriage of justice resulted.

We discern neither extraordinary circumstances nor a risk of miscarried justice in this case, so we choose not to conduct a full plain error review of this forfeited issue. Nor do we find any manifest indication that the district court abused its discretion by admitting the evidence while sanctioning the Defendants' delay. Accordingly, we affirm its denial of Hicks's motion in limine.

## C. *Enterprise Coverage under the FLSA*

Hicks also contends that the district court erred in granting a directed verdict in the Defendants' favor on a

portion of her FLSA claim based on its determination that her employer at the time did not fall within the FLSA's coverage. She first argues that Felling was bound by the FLSA as a matter of law because he controlled an enterprise of businesses with a common business purpose. She then argues, in the alternative, that the jury should have decided whether Felling was within the FLSA's coverage based on his testimony at trial about his annual revenues in one of his companies, Felling Hotels, LLC. We review *de novo* the district court's grant of judgment as a matter of law on Hicks's FLSA claim in the Defendants's favor. *Marcus & Millichap*, 639 F.3d at 311.

Under the FLSA, an employer must pay its employee overtime wages (150% of the employee's hourly wage) for each hour worked in excess of forty hours a week. 29 U.S.C. § 207(a)(1). For Hicks to prevail on her FLSA claim for overtime wages, she must first demonstrate that she or her "Employer"—a concept she defines as the combination of Felling and Avery Drei—falls within the Act so as to trigger its substantive provisions. During oral arguments on the Defendants' motion for a directed verdict on this count, the district court concluded that Hicks would have been engaged in commerce while working as a desk clerk at the hotel and that she could therefore seek overtime wages under the FLSA for that period. Accordingly, the district court denied the Defendants' directed verdict motion to that extent, allowing the jury to consider her claim.

While the hotel was being constructed in 2006 and Hicks was working as a security guard, however, Hicks

was arguably not engaged in interstate commerce. To place herself within the FLSA's protection during that period, Hicks argues that the Defendants were part of "an enterprise engaged in commerce" because Felling operated several businesses. 29 U.S.C. § 207(a)(1). The FLSA defines an enterprise as "the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units." 29 U.S.C. § 203(r)(1). Thus, to fall within enterprise coverage, Felling's businesses must "1) be engaged in related activities, 2) under unified operation or common control, and 3) have a common business purpose." *Reich v. Gateway Press, Inc.*, 13 F.3d 685, 694 (7th Cir. 1994). Further, the enterprise must have an "annual gross volume of sales made or business done [of] not less than $500,000." 29 U.S.C. § 203(b)(1)(A).

According to Hicks, Felling's various business endeavors—including Felling Hotel, LLC (operating entity for two hotels not involved in this suit) and Felling Investments, LLC (rental property management company)—meet these elements, as they were under Felling's control and operation and had combined annual gross revenues in excess of $500,000. The district court assumed that Hicks demonstrated the common control criterion, but it questioned what common business purpose united the endeavors into a single FLSA enterprise. (Directed Verdict Tr. at 9.) Her counsel responded, "The common business purpose is to make money and how they do

that can be different." (*Id.* at 10.) The district court, noting that a profit motive alone is not a sufficient common business purpose, found that the businesses did not constitute an enterprise under the FLSA. Accordingly, it granted a judgment as a matter of law in the Defendants' favor as to Hicks's overtime claim as it related to her time as a security guard in 2006. (*Id.* at 20-22.)

Hicks asks us to review and reverse that judgment, but she takes an entirely different tack on appeal than she took below. She now argues that Felling "used the resources of Felling Investments, LLC and Felling Hotel, LLC for the common business purpose of constructing the hotel." (Appellant's Br. at 12.) This theory was never presented, let alone developed, in the district court. Because she advances a completely different theory before us than she advanced below, she has forfeited this issue. *See Jackson*, 627 F.3d at 640; *cf. Liberles v. Cook County*, 709 F.2d 1122, 1127 (7th Cir. 1983) ("It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered. If it does not do so, and loses the motion, it cannot raise such reasons on appeal."). The argument she did make lacks merit; the district court was correct that a profit motive alone does not constitute a "common business purpose" as required for enterprise coverage in the FLSA. *Brennan v. Veterans Cleaning Serv., Inc.*, 482 F.2d 1362, 1367 (5th Cir. 1973) ("More than a common goal to make a profit, however, must be shown to satisfy the requirement."); *Wirtz v. Columbian Mut. Life Ins. Co.*, 380 F.2d 903, 907 (6th Cir. 1967) (same).

Hicks decided not to provide a complete transcript of the district court's reasoning regarding its enterprise coverage decision,[3] she changed her tack on appeal so that neither the district court nor the Defendants had an opportunity to respond to the theory now espoused, and she neither acknowledged this forfeiture nor made any attempt to show the elements required for plain error review in her brief. Accordingly, we decline to review this aspect of her contention for plain error. *See Jackson*, 627 F.3d at 640.

We also find no merit in her final argument regarding FLSA coverage. Hicks argues that the district court should have allowed the jury to decide whether Felling Hotels, LLC independently earned more than $500,000 in annual revenue. She does not explain the relevance of that potential finding in light of her defining her "Employer" as Avery Drei and Felling individually, but we will assume she implicitly argues that Felling Hotels and Avery Drei are both innkeeping ventures that should comprise an FLSA enterprise. It is true that Felling's testimony established that one of his businesses (Felling Hotels) could have had revenues of over $500,000 in 2005. But the transcript shows that he was completely uncertain about the values, and no other testimony or

---

[3] At least sixteen of the twenty-two pages comprising the directed verdict argument transcript involve counsels arguments and the district court's ruling and reasoning on the enterprise coverage issue. Hicks included only one of those pages in her separate appendix, and that page does not show the district court's decision or rationale.

evidence showed the amount of gross revenue the entity earned. Nor did Hicks seek any business records or other documentation of revenue during discovery. Felling's testimony, standing alone, would not support the conclusion that Felling Hotels met the revenue threshold outlined in 29 U.S.C. § 203(b)(1)(A). See Fed. R. Civ. P. 50(a); *Zimmerman v. Chicago Bd. of Trade*, 360 F.3d 612, 623 (7th Cir. 2004) ("[I]n order to reverse a district court's grant of judgment for the defendants as a matter of law, there must be more than a mere scintilla of evidence to support the plaintiffs' case.").

Further, the ultimate determination whether the employer is an enterprise subject to FLSA's requirements is ordinarily the court's province, not the jury's. *See Sapperstein v. Hager*, 188 F.3d 852, 856 (7th Cir. 1999); *Reich v. Bay*, 23 F.3d 110, 114 (5th Cir. 1994); *Brock v. Hamad*, 867 F.2d 804, 806 (4th Cir. 1989); *Brennan v. Plaza Shoe Store, Inc.*, 522 F.2d 843, 846 (8th Cir. 1975). In light of the meager evidence of revenue; Hicks's undeveloped argument as to its significance; her decision not to include the transcript of the court's decision; and her neglect of the district court's reasoning in her appellate arguments, we cannot conclude that the district court erred in granting the Defendants' motion for a judgment of law on her FLSA overtime wage claim.

### III. CONCLUSION

Finding no error in the district court's rulings and judgments, we AFFIRM.

CUDAHY, *Circuit Judge*, concurring in part and concurring in the judgment. With respect to the issue of Fair Labor Standards Act (FLSA) coverage, I believe that there is sufficient evidence to avoid a judgment for the defendants as a matter of law. Specifically, Chance Felling's testimony contains an admission against his interest, as the owner of Felling Hotels, that the company could have had revenues exceeding $500,000. He was probably the most authoritative witness on the subject of the company's income, and the fact that his testimony was somewhat equivocal should fall by the wayside when the evidence is viewed in the light most favorable to the plaintiff. *See Cooper v. Carl A. Nelson & Co.*, 211 F.3d 1008, 1017 (7th Cir. 2000). However, as the majority points out, Felling Hotels is not a named defendant, and there is no explanation how its potential liability under the FLSA is connected to the liability of the defendants that are named in this suit. I therefore join the judgment of affirmance.